# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**CODRUT RADU RADULESCU**

Codrut Radu Radulescu Attorney At Law

West Orange, New Jersey 07052

Voice 973 536 2608

| |
|---|
| Sync Labs LLC and Codrut Radu Radulescu , Plaintiffs,<br><br>v.<br><br>Fusion-Manufacturing and Michael Ferchak, Defendants |

**Hon. Madeline Cox Arleo**

**Civ. Action no. 11-cv-03671 (WHW)(MCA)**

**DOCUMENT ELECTRONICALLY** FILED

# PLAINTIFFS' LEGAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY CODRUT RADU RADULESCU, ESQ AS THE LAWYER FOR PLAINTIFF SYNC LABS LLC

**On the Brief:**

**Codrut Radu Radulescu,Esq**

TABLE OF AUTHORITIES

CASES

Bailey v. Gibbons, 2011 WL 4056202 (D.N.J. Sep 12, 2011) ------------------------------------------------- 21

BSW Development Group v. City of Dayton, 1995 WL 1671908, (S.D.Ohio, September 13, 1995 )------------- 16

Carlyle Towers Condo. Ass'n v. Crossland Sav., 944 F.Supp. 341, 345 (D.N.J.1996). ----------------------------- v,20

Duncan v. Poythress, 777 F.2d 1508, 1515 n. 21 (11th Cir.1985) ------------------------------------------------ 14

Electronic Laboratory Supply Co., Inc. v. Motorola, Inc., 1990 WL 96202, (E.D.Pa., July 03, 1990 ). ------------ 19

Garza v. McKelvey, U.S. Dist. LEXIS 311, *6 (D.N.J. Jan. 2, 1991) ------------------------------------------------ 8

In re Cendant Corp. Securities Litigation, 124 F.Supp.2d 235, 2000 WL 1824443, (D.N.J., December 11, 2000) 4

In re Estate of Walsh 17 Misc.3d 407, 840 N.Y.S.2d 906 (N.Y.Sur.,2007) --------------------------------------- 10, 16

Laboratory Supply Co., Inc. v. Motorola, Inc., 1990 WL 96202, (E.D.Pa., July 03, 1990) --------------------------- 14

Main Events Prods., LLC v. Lacy, 220 F.Supp.2d 353, 358 (D.N.J.2002). ------------------------------------------- 12,19

Stanley Dean Witter & Co., Inc. 2007 WL 2446529, 3 (D.N.J.) (D.N.J.,2007) ------------------------------------- 21

Wellington Place Condominium Ass'n v. Carty, 2011 WL 2566105 (N.J.Super.A.D. Jun 30, 2011). --------------- 1


STATUTES

28 U.S.C. § 1654 ------------------------------------------------------------------------------------------------------ 9, 16


ADVISORY OPINIONS

Accord Opinion 527, 113 N.J.L.J. (1984) ---------------------------------------------------------------------------- 18

Opinion 243, 95 N.J.L.J. 1145 (1972), ------------------------------------------------------------------------------ 18

## Introductory statements

This brief is respectfully submitted in opposition to Defendants' motion to disqualify Codrut Radu Radulescu, Esq. ("Radu"), as the lawyer for Plaintiff Sync Labs LLC ( "COMPANY").

First  this motion should be denied because of substantial hardship it would inflict on the Plaintiffs. There is no money to pay a lawyer and this specifically due to Defendants wrong doings. Hardship is a common denominator for all rules concerning attorney disqualification, including RPC 3.7, 1.7  and 1.8.

Second, this motion should be denied because Defendants are far from meeting the burden of proof even by employing means like strategically misstated the law or ignoring fundamentally material facts in the case as they do.

Third the motion should be denied because the facts in this match the bright line exceptions from the general rule.

Present case has a few distinguishable factual aspects that are essential in determining the applicable law. As indicated by New Jersey courts, factual analysis is the most important and painful aspect of the motions to disqualify counsels and for a good reasons as many times such motions are strategically abused for unfair advantages.

> " [C]lose judicial scrutiny of the facts of each case is "required to prevent unjust results." Gould, Inc. v. Mitsui Mining & Smelting Co., 738 F.Supp. 1121, 1126 (N.D.Ohio 1990). Accord, Reardon v. Marlayne, Inc., 83 N.J. 460, 469, 416 A.2d 852, 857 (1980)(indicating that when dealing with ethical problems, "[t]he conclusion in a particular case can be reached only after `painstaking analysis of the facts and precise application of precedent.'") "Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts." Gould, 738 F.Supp. at 1124 (citing Huntington v. Great Western Resources, Inc., 655 F.Supp. 565, 567 (S.D.N.Y.1987))."

Carlyle Towers Condominium Ass'n v. Crossland Sav., 944 F.Supp. 341, 345 (D.N.J.1996).

There is substantial gap between the facts in our case and the facts accounted for in Defendants'
motion which raises a the question if Defendants action is strategically motivated. Defendants'
boiler plate Legal Brief and cited case law fail to consider the specific facts of the case and
consequently fails to meet the legal muster. We are briefly describing here the essential and
distinguishable factual aspects of the case.

First Radu is acting as a pro se litigant and has the right to advocate and testify for his
cause like any other lay person. Second Radu is not the only witness or source for the evidence
required to prove the case. Third Radu acquired the knowledge while he was a lay person, owner
and CEO of the COMPANY. Radu became an attorney two years later. Therefore it is more
appropriate that Radu should testify in the pro se capacity. Fourth the represented COMPANY
entity is entirely dependent on Radu who is the founder, owner and operator of the COMPANY.
Fifth Radu acts as counsel without pay due to hardship created by Defendants. Radu himself
would have to pay another lawyer for his fully owned COMPANY. Radu covered to the
maximum possible extend for the Defendants breach of contract and other intentional tortious
acts. No money is now available to pay counsel that can represent the co-plaintiff. Sixth there is
no less harm shown by Defendant if the motion is granted because even if granted the motion
will not eliminate the attorney-witness situation because the attorney remains a the pro litigant in
the trial against the Defendants. Seventh this is a Federal Bench trial where there is no significant
risk that the bench, as the fact finder would be confused by the dual role of witness and attorney
as advocated by Defendants. The only real outcome of granting this motion to disqualify attorney
would be the unjust dismissal of the COMPANY while the same attorney-witness would
continue to be an opposing party with the same rights in the litigation.
Additional to the fact that law makes an explicit exception from the attorney-witness

iii

disqualification rule for a pro-se attorney, there is no need for the COMPANY attorney to testify

because the pro se co plaintiff has no less knowledge of the facts in the case and can testify. The

distinguishable legal posture between the attorney and the client eliminates the attorney-witness

issue entirely even if the same physical person performs both roles. In this litigation Radu

performs a dual role as a pro se Plaintiff and as an attorney for the COMPANY.  Radu is the

CEO of the COMPANY and is competent to testify  under the pro se posture not as the attorney

for the COMPANY. Concerning the conflict of interests zealously advocated by defendant, as

the COMPANY depends entirely on Radu it is hard to imagine the existence of the material

conflict of interest required by RPC 1.7.  Any harm or benefit to the COMPANY would directly

reflect on Radu. The level of conflict requires some adversity in the context of litigation.

Movants failed to show such adversity between the owner and the owned COMPANY.

Additionally Rule 1.8 is not applicable because Radu cannot acquire an interest on what he

already owns and because he is not paid and has no financial interest in his position as attorney.

An interested attorney must have a direct interest resulting from his legal services as further

detailed in our legal brief. More the zeal of Defendants' lawyer went as far as misrepresenting

the law. Opposing counsel strategically changed the text of the R.P.C 1.8(i) swapping the future

tense with past tense and bend the law from inapplicable into applicable to the facts in this case.

Defendants state " R.P.C. 1.8(i) prohibits conflict of interest where a lawyer **has** a proprietary

interest in the cause of action". The real text of the law states "[a] lawyer **shall not acquire** a

proprietary interest in the cause of action" ( our highlight).

  Our argument is organized in three sections.

  First we shows the substantial hardship of plaintiff that cannot afford to pay a lawyer.

Granting of this motion will result in denial of justice for the Sync Labs LLC Plaintiff. The facts

in this case entitles Plaintiffs to the R.P.C. 3.7 (a) (1) exception from disqualification for substantial hardship.

Second section addresses Defendants' failure to meet the required burden of proof to disqualify a counsel under R.P.C. 3.7 (a) and failure to meet the burden of proof required to disqualify a counsel according to R.P.C. 1.7 and R.P.C. 1.8.

Last we define the applicable law to the facts in the case and prove that attorney Codrut Radu Radulescu ( herein Radu) has the legal right to represent himself and  his owned and operated NJ LLC.

## LEGAL ARGUMENT

**THE MOTION SHOULD BE DENIED ACCORDING TO RPC 3.7(a)(3) BECAUSE OF THE SUBSTANTIAL FINANCIAL HARDSHIP CREATED BY THE WRONGFUL ACTS OF DEFENDANTS AND BECAUSE DEFENDANTS SHOULD NOT BENEFIT FROM THEIR WRONG DOING.**

The lack of financial resources to pay a lawyer qualifies as substantial hardship for the purpose

of R.P.C 3.7 (a)(3).

> "Thus, the judge made a finding that it was highly unlikely that Marie would be able to afford counsel . . .. That scenario constitutes "a substantial hardship" that should have caused the judge to deny Hammond's motion to disqualify Matthews. RPC 3.7(a)(3). Thus, we conclude that the very basis upon which the judge relied in ordering Matthews's disqualification constitutes a mistaken application of the applicable law. We therefore reverse the order under review, both because the judge misapplied both prongs of the Trupos test, and because the judge ignored the "substantial hardship" exception to RPC 3.7. "

<u>Wellington Place Condominium Ass'n v. Carty</u>, 2011 WL 2566105 (N.J.Super.A.D. Jun 30,

2011). This is precisely the situation of the Plaintiffs in our case. The COMPANY has no money

to pay a lawyer. The Plaintiffs Exhibits show five or six figures of negative income for the past

few year. This is normal for the initial development stage of a technology startup when the

existence of the company depends entirely on the influx of capital while it develops the

intellectual property to be commercialized later. Defendants try to unfairly exploit in their favor

this fragile dependency they deliberately created when promising to invest in the COMPANY

followed by the breach of the investment contract and the resulting financial hardship.

Defendants are or should have been aware about the grave consequences of their intentional

wrongful acts that lead to the Plaintiffs' present financial hardship and the permanent loss of

future income in patent and IP rights and revenues.  This financial hardship is an exception from

disqualification according  Rule 3.7(a)(3). In <u>Freeman v. Vicchiarelli</u> 827 F.Supp. 300, 305(

1

d.N.J. 1993) which is the very same case intensively cited by Defendants in support of this motion to disqualify counsel.  The hardship refers to how much additional money the client would have to spend for the replacement attorney.

> "In considering the "client's interest," both courts look to the amount of time and money invested by the client in his counsel, as well as to the proximity of the trial in determining whether disqualification of counsel would unduly prejudice the client. In my opinion, the same standard applies to the "substantial hardship" exception to RPC 3.7"

Freeman court is aware that the change of counsel would incur additional costs as the new counsel would charge for learning the case and taking the trial on his own path. In our situation Radu is the second attorney on the case. Also knows the case and does not charge the company. Another change of the attorney on file would incur devastating costs for the COMPANY.

Defendants Legal Brief doesn't mention a word about financial hardship while Defendants have or should have the knowledge of both the facts and the law. Financial aspect of litigation is the criteria used in New Jersey to qualify for the hardship exception from applicability of RPC 3.7 and excepting the attorney-witness from disqualification. Both the incapacity to pay counsel and the current investment in litigation that already affected Plaintiffs are recognized factors of significant hardship. In our case the COMPANY is a technology company. It is a start up that needs cash to grow its technology and patent portfolio. The present hardship of the COMPANY is the direct result of Defendant breach of an investment contract followed by other wrongful and criminal acts of defendant Ferchak that maliciously harm Plaintiffs without any apparent benefit for Ferchak. Defendants show in exhibit B the Schedule K1 tax return form which indicates a negative balance. This is evidence that Defendants knew about the financial hardship of the COMPANY and deliberately tried to hide it in their legal brief. Radu acts as counsel without pay and this is the only way Sync Labs COMPANY can be represented at this time.

2

**Defendants should not benefit from their wrong doing.**

Defendants inflicted irreparable harm to the Plaintiffs who lost forever Patent rights in several

major world markets. The total values of these markets is hundreds of millions of dollars.

Plaintiffs were deprived from future revenues that were actually planned and accounted for by

Defendant Ferchak during the time he was a VP of operations for the COMPANY.  Also Radu

had to borrow money and deplete his life time savings to meet contractual obligations and to

mitigate the damages resulted from Defendant Ferchak breach of contract.

Defendant Ferchak made promises, acted as showing full support, won the trust and

reliance resulted in the commitment to grow Radu inventions as  COMPANY technology and

develop the business for mutual benefit. Defendant Ferchak pledged $250,000 and his support as

full time manager in a key VP of operation position and Regional China Market representative.

Defendant encouraged and backed the company to enter into a technology development contract

funded with public money. When Plaintiff became dependent on Ferchak promised investment

Ferchak blackmailed Plaintiffs to receive undeserved profits and cash. Ferchak refused to pay his

cash contribution, resigned from his position and unlawfully accessed company computers,

ousting Plaintiffs access to company confidential information and trade secrets, stealing emails

and domain name and acting to harm the business reputation. Plaintiff Radu, had to transfer the

funds allocated for the international filing of his patents to meet COMPANY contractual

obligations.  Now Defendants want to continue their harm and further deprive COMPANY of its

day in court. By disqualifying Radu the company claim would be dismissed because there are no

funds for the COMPANY representation. An order of dismissal would simply reward defendants

for their wrong doing.

For the unlikely situation when the court would find reasons for disqualification based on the

3

conflict of interest advocated by Defendants, the application of the balancing hardship principle

from In re Cendant Corp. Securities Litigation, 124 F.Supp.2d 235, 2000 WL 1824443, (D.N.J.,

December 11, 2000) requires the court to balance the hardship to the client of the disqualified

lawyer with the potential harm to the adversary.

> "Under **New Jersey** rules governing **disqualification** of **attorney** for conflict of interest,
> court must balance hardships to client whose lawyer is sought to be **disqualified** against
> potential harm to adversary should **attorney** be permitted to proceed."

In re Cendant Corp. Securities Litigation, 124 F.Supp.2d 235, 2000 WL 1824443, (D.N.J.,

December 11, 2000)

In our case there is no harm to the adversary resulting from denying this motion to disqualify

attorney. Regardless of the court decision Defendants would face the same advocate and alleged

witness in the either the posture of a pro se plaintiff or the posture of counsel for the

COMPANY. Defendants are in fact seeking an unjust disqualification resulting from the

hardship induced by their own wrongdoing and financial harm caused to Plaintiffs. We are

bagging for justice and denial of this frivolous motion.

**MOVANT CANNOT MEET THE BURDEN OF PROOF NECESSARY TO
DISQUALIFY RADU AS THE ATTORNEY FOR HIS OWNED AND OPERATED
COMPANY.**

In the present case the pro se Plaintiff has the right to be a witness in his own case and has the

right to be a witness for the co-plaintiff COMPANY. The testimony of the pro se plaintiff would

be sufficient to prove the case. Therefore the testimony of the attorney for co-plaintiff would be

cumulative and inadmissible. Attorney and the pro se plaintiff are distinct juridical entity in this

case. The law makes a distinction between the voice of the attorney of a COMPANY entity and

the voice of the owner of the COMPANY. There is no reason to abolish this distinction for the

testimony of the advocate and the testimony of the owner. The attorney-witness representing the

COMPANY is legally different from the pro se witness also owner of the COMPANY. It is only

rational to chose the pro se owner testimony not the lawyer testimony when all things are equal

otherwise.  Additionally Defendant's motion to disqualify counsel doesn't show why the

attorney knowledge is unique, that there are no other sources on file for the same information

and why the attorney is a necessary witness ( Contrary to DC[1] Exhibit B and PE5[2] that show

abundant alternative sources). More, the statements quoted by Defendants' which statements are

made by the Plaintiffs do not automatically create the need for testimony.  The fact that

Plaintiffs' assertion of their legal rights are called "admissions" by the Defendants is suggesting

the agreement between the parties therefore it is not raising a need for testimony. It can at best

create an issue of legal interpretation. Defendants fail to provide any support behind their

statement. Additionally there is no actual need for testimony because there is sufficient

alternative evidence.  Defendant is in possession of thousands of electronic communications as

emails, records of Skype messenger Internet communications, records of Internet instant

messaging communications, taped conversation that are abundant source of alternative

information disclosed by Plaintiffs as part of Rule 26 discovery.  This evidence can be

introduced through Defendants or other parties with knowledge. More the interrogatory

introduced by opponent as exhibit B of the Movant's Declaration of Counsel, which Exhibit B

---

[1] DC stands for Declaration of Counsel in Support of Defendants' Motion

[2] PE stands for Plaintiffs Exhibit

we include by reference indicates several such alternative persons with knowledge of facts at

interrogatory (1) points (a) to (e). There is not a single response where Radu is the only witness.

Defendant fails to show why these alternative sources of information are insufficient to prove

Plaintiff's case.  Therefore Attorney's testimony is not necessary to prove his case

notwithstanding that the pro se plaintiff can testify with no less competence.

Defendant wrongly states that " Mr. Radulescu's pleadings and admissions, however,

demonstrate that he is the primary, if not sole witness who can testify on behalf of the Plaintiffs.

"  LB1:7[3]. First the law requires the Movant to proof that the attorney is a necessary witness.

Necessity is met if attorney is the sole and the unique source of information. Defendant states his

opinion that attorney is the "primary" source of information. "Primary" is different from

"necessary" as required by cited law. See Merriam – Webster English dictionary. Additionally

Defendant impermissibly distorts the facts stating that Radu, as attorney is the sole witness who

can testify on behalf of the Plaintiffs.  The Exhibit B shows quite the opposite in the number of

alternative witnesses and written evidence. Also there are 2116  electronically stored

communications ( a list is attached as exhibit) disclosed to Defendants through Rule 26. This is

because Defendant Ferchak worked and lived in China and there is a time difference of 12 hours

which makes direct verbal communication difficult. The Movants failed to show necessity to

testify and pointing to issues where there is no alternative way to prove the facts, except through

---

[3] LBp:l stands for Legal Breaf page p line l. Explicitly this is a reference to the Legal Brief page 1 line 7.

the testimony of the attorney.

Further  Defendants claim that " his testimony would be relevant" LB1:13, followed by the conclusion that the "primary" and the "relevant" reasons should disqualify the attorney (we assume it refers to the necessary witness reason of NJ RPC 3.7).  This is at odds with what NJ RPC requires. The " necessary witness" cannot be blurred into "primary " or "relevant" as Defendants concludes a few lines below ( LB1:19) .  More concerning in Defendants' Legal Brief is the rewriting of the law to serve Defendants' disqualification goals. Defendants state "R.P.C. 1.8(i) prohibits conflicts of interest where a lawyer has a proprietary interest in the cause of action". Defendant replaces the " **shall not acquire** a proprietary interest" ( see LB12:2) with "**has** a proprietary interest" ( our emphasis ) . Defendant Ferchak worked as the VP of the operations for the COMPANY and has all the insight knowledge sufficient to know that Radu as attorney has nothing he can acquire in this case. Opposing attorney misrepresents the law to match the facts in the case for his biased interpretation.

A conflict of interest is also claimed at LB5:13 without any explanation.

Defendants quote R.P.C. 3.7(a)(1) as a waver for the attorney-witness rule. LB5:21.

Respectfully, from the documents on file it is not clear what are the contested factual issues that would prevent attorney to testify. Only evidence provided to the Plaintiffs pertains to Rule 26 discovery and consists of  85 pages including 28  pages of Texas Instruments Integrated circuits data sheets, 5 pages of invoices and a few emails which are also included in Plaintiffs Rule 26 disclosure consisting of at least 2116 electronic records.

Movant is improperly applying to the facts in this case the legal conclusions sourced from a completely different factual context in <u>Freeman v. Vicchiarelli</u> 827 F.Supp. 300 ( D.N.J. 1993) where " [p] laintiff's counsel was only witness who could testify about what occurred in

the hearing." LB6:9. No such uniqueness in our case.  Further there are several facts that distinguish our case from <u>Freeman v. Vicchiarelli</u>.  First the attorney was not a pro se litigant, second the attorney was the only witness, third it acquired his knowledge while acting as attorney, forth attorney had no prior relation, interest or dependency with the client, fifth attorney was paid and there was no financial hardship for the plaintiff, sixth the attorney disqualification resulted in removal of the advocate from the trial.

In contrast Radu is acting as a pro se litigant and can testify independently in that posture ( Op 343) , Radu is not the only source for the evidence required to prove the case alternative sources being available ( see LB Appendix B), third Radu acquired the knowledge while he was a lay person not an attorney, fourth there is tight dependency between the client COMPANY and Radu who is the founder, owner and operator of the clinet, fifth Radu acts as counsel without pay due to hardship and due to the fact that Radu himself would have to pay the lawyer for his company and finally Radu will have the right to continue be both witness and advocate as pro se co-plaintiff, even if he would be disqualified as attorney for the co-plaintiff, which defeats the entire purpose of this motion.  Concerning the alternative ways to introduce the evidence, notably most of the communications between Radu and defendants were electronic. The best evidence is therefore in writings. More there are additional witnesses with similar knowledge for instance the NJ Commission for Science and Technology that received the investment contract and evidence of funding from Defendant Ferchak. At least these reasons the decision in Freeman to disqualify the counsel is not applicable to the facts of this case.

The attorney is "likely to be a necessary witness only where he has crucial information in his possession which may be divulged." <u>*Garza v. McKelvey,*</u> U.S. Dist. LEXIS 311, *6 (D.N.J. Jan. 2, 1991). Defendant failed to demonstrat that Radu has exclusive possession of such crucial

information.

The seven distinguishable facts of this case make Freeman inapplicable. The court would not have the dilemma in <u>Freeman v. Vicchiarelli</u> to deny either the representation or the testimony of the attorney because the attorney has an independent right to advocate and be a witness in his own trial ( see 28 U.S.C. § 1654).  LB7:2

Defendant properly admits that the current applicable law is that an attorney – witness should not be disqualified in pretrial matters. LB7:12.  Next defendants quote Judge Deveboise declining to address pre trial situations where attorney testimony is required. " [T]he present decision does not address the  intermediate situation where an attorney must testify not at trial but at a pre-trial evidentiary hearing, such as the preliminary injunction hearing . . ." ( see LB7:15 ).  Defendant improperly concludes that the court addressed what in fact and explicitly refrained from addressing, which is the pre-trial evidentiary hearings. The correct conclusion is that even in a general situation, notwithstanding the specific facts of this case, the attorney-witness should be allowed to represent a client in pretrial matters. Short after the Defendants renew their claim that unspecified contested issue is a reason for disqualification in pretrial proceedings ( LB8:2) without a reasonable explanation.

Finally Defendants admit that they ignored a fact of material significance. In all Defendants' cases the counsel was " unrelated" to the client (LB8:10). But they further omit to quote the law that distinguishes such context and explicitly denies disqualification. We are respectfully trying to fill this gap introduced by Defendants and provide the legal authority preventing disqualification of the pro se attorney-witness. It is common knowledge that representation of family members, children, spouses, partnerships or clients in which attorney has a direct interest trumps the attorney – witness rule.  The N.J. Advisory Comm. on Professional Ethics Op. 343

published July 29, 1976 found "no ethical consideration which would prevent the attorney from representing himself and his wife . . .. He has the same fundamental rights in this respect as any other individual".

Federal courts make a clear exception from the RPC 3.7 for attorneys representing partnerships in which they hold an interest:

> "When attorneys are themselves parties to litigation, including litigation involving a partnership of which the attorney is a partner, the right of litigants to represent themselves usually trumps disqualification under the advocate-witness rule, with the result that attorney-litigants may represent themselves pro se, as well as the partnerships of which they are members, notwithstanding that they will testify at the trial." N.Y.Ct.Rules, § 1200.21 [DR 5–102].

In re Estate of Walsh 17 Misc.3d 407, 840 N.Y.S.2d 906.

Further Defendants claim that Radu should be disqualified because he can create potential prejudice (LB8:10). We respectfully disagree that Radu's disqualification as attorney on record would have any prejudicial impact or effect on Defendants because Radu will continue to be and advocate and a witness in his posture of pro se litigant. The disqualification would only deny the day in court of COMPANY because of hardship and impossibility to pay a lawyer result of Defendants wrongdoing.  Defendants quote the [ABA] Model Rules finding the primary danger in the fact finder assigning undue weight to the statement made by the attorney. Courts in our Third Circuit found that the concern for such confusion is unwarranted for bench trials like in our case : "risk that testimony would be given undue weight by factfinder was minimized by fact that it was bench trial." Commonwealth v Gibson 670 A2d 680.

**Defendants didn't meet the burden to show that the attorney is a necessary witness**

Addressing  the three exceptions of RPC 3.7 Defendant claims again the existence of " contested factual issues" (LB10:2) which issues are still not explicitly stated. We solicited Defendants'

attorney several times to explain what is the foundation of his case: during the phone conference

call in Dec 2011, after the court hearings on Feb 29, 2012 and by email. This lack of specificity

denies the necessity to testify and should be sufficient in itself to dismiss the motion to disqualify

counsel.

Defendants' Rule 26 discovery did not produce evidence in conflict with Plaintiffs' statements

nor any evidentiary support for Defendant's counterclaims.  Defendants' attorney explicitly

stated that there is not a single document he has to produce according to the "request to produce

documents " sent by Plaintiffs on Nov15, 2011 (PE5 attach as exhibit). Defendants case is in fact

a collection of meritless counterclaims and attorney certifications. Additionally at the conference

on Dec 29, 2011 Defendants' attorney refused to provide any explanation or some legal basis for

Defendants' counter claims and denials. Because Defendants refuse to produce evidence or

explain the basis for their counterclaims and denials it is not reasonably possible to draw a

conclusion about necessity to testify.


 **The motion for disqualification should be denied because defendants didn't show a conflict of interest between the attorney and his owned and operated COMPANY ( R.P.C. 1.7).**

In New Jersey it is established law that the attorney employer relation ( self interest ) is not a

creating the level of  conflict of interest sufficient to disqualify the attorney from representing the

employer.

> "A conflict of interest which requires disqualification does not exist merely because an attorney may be personally interested in the outcome of litigation.FN6 "One need not tax the mind too strenuously to conjure up an entire assortment of instances in which an attorney's self-interest may theoretically conflict with the interests of his client." *Essex Cty. Jail Annex Inmates v. Treffinger,* 18 F.Supp.2d 418, 431-432 (D.N.J.1998). This type of personal interest or "self interest", however, is not the type of interest which necessarily gives rise to a conflict of interest. *Essex Cty.,* 18 F.Supp.2d at 432. Insofar as Mr. English serves as the general counsel for Main Events and is personally motivated to maintain his position, and also serves as a trustee for the minor beneficiaries, Lacy has

11

not established that this dual role creates an actual conflict warranting disqualification pursuant to RPC 1.7(b)."

Main Events Prods., LLC v. Lacy, 220 F.Supp.2d 353, 358 (D.N.J.2002).

In our case attorney owns and controls the COMPANY. For the attorney there is no benefit resulting from the case. Attorney is not paid for his services and there is no other benefit that the COMPANY would grant for the representation. A conflict or interest requires the presence of an adversarial posture between two clients. There is no such adversity between the COMPANY and the owner of the COMPANY. Any harm to the COMPANY results in harm to the attorney owner. Defendants advocate a concurrent conflict of interest "is typically implicated when the lawyer stands to derive some benefit in addition to a legal fee" ( LB11:5). As in our case there are no legal fees paid to the attorney and more there are no additional benefits the attorney can derive, the argument has no factual basis and is irrelevant.

Defendant further cites Advisory Committee Opinion 353. The first striking element is the title of the opinion "Conflict of Interest Waiver by Public Body."  Indeed the opinion defines its applicability "where the conflict arises between the attorney's own personal interest and the public interest. " The authority cited is entirely centered on representation of public interest organizations and defines clear lines of conduct. "Where the public interest is involved, an attorney may not represent conflicting interests, even with the consent of all concerned. See Ahto vs. Weaver, 39 N.J. 418 (1963), cited in Schear". The conclusion highlights again the public element required for granting disqualification: "The inquirer should not advise the planning board in a matter as to which he has a personal, financial, business, or property interest."  In present case the attorney represents a NJ LLC that is entirely owned and operated by himself. Therefore there is no applicability for the Opinion 353 which is directed to address the

12

distinctive situation where public interest is involved.

Additionally Defendant cites in his support the Advisory Committee On Professional Ethics Opinion 617 "Representation of Estate in Wrongful Death Action Where  Partner is "Of Counsel" to Firm Representing Another Part"

http://lawlibrary.rutgers.edu/collections/ethics/acpe/acp617_1.html

The conflict requires in general some level of attorney client relation with each of the opposing parties involved in litigation. The subject of the opinion is simultaneous representation of parties directly adverse in the same litigation by the same attorney or firm of attorneys. Specifically a partner Z of a attorney Y representing a client B is off counsel to a firm X that represents a party A in direct conflict with the party B. In this case B is accused of killing A

The opinion states:  the "interests of the estate of B are clearly and materially adversely to the interest of the estate of A"

In our case there is no direct conflict between party A, the Plaintiff Attorney and party B, the company owned by Plaintiff Attorney.  Neither is company B dead, nor is anybody accusing party A of harming party B. Defendants didn't show a shade of conflict between the A and B in our case . The factual association is so farfetched that it falls outside zealous representation. It is frivolous misrepresentation.

**Defendants fail to show how RPC 1.8 would apply to the facts of our case**

Additionally Defendant knows or should have known that Rule 1.8 does not apply because there is no interest acquired by the attorney as result of representation. Radu is the Owner of the COMPANY client and cannot acquire what he already owns. The Defendants are in possession

of the Ownership Ledger indicating the ownership and the pecuniary interests in the company as result of R26 disclosure. Also noticeably Defendant Ferchak himself prepared and maintained the ownership ledger. More, there are no funds the company can use to pay an attorney regardless of the name of the attorney representing the Company. Defendants are in possession of the form K1, which they actually attached as exhibit  B of  the "Declaration of Counsel in Support of Defendant's Motion to Disqualify" indicating the business negative balance.  As there is no fee or other interest that would be directly paid the representing attorney in his position of representing attorney, the claim lacks basis, Defendant knows or should have known this facts. This motion for disqualification has only one meaning, a strategic purpose to derail the discovery and consume Plaintiff resources.

**THE MOTION SHOULD BE DENIED BECAUSE RADU AS A PRO SE ATTORNEY REPRESENTING HIS OWN COMPANY IS EXCEPTED FROM ATTORNEY-WITNESS DISQUALIFICATION RULE.**

**A pro se attorney is excepted from the attorney-witness rule ( RPC 3.7) and can be both and advocate and witness.**

 "[T]he attorney-witness rule is inapplicable to attorneys representing themselves **pro se**. See, e.g., Duncan v. Poythress, 777 F.2d 1508, 1515 n. 21 (11th Cir.1985) (citing O'Neal v. Bergman, 452 A.2d 337, 344 (D.C.1982)).[FN6] ." Electronic Laboratory Supply Co., Inc. v. Motorola, Inc., 1990 WL 96202, (E.D.Pa., July 03, 1990)

In this case Radu is a pro se litigant and also represents his COMPANY against Defendants. Therefore the attorney-witness rule does not apply to the facts in this case. Radu cannot be disqualified as attorney notwithstanding that the presumptive testimony should be attributed to

the legal party that acquired the knowledge which is Radu in the pro se Plaintiff posture and not

on the attorney posture. Defendant argument fails to observe and distinguish the por se posture

that denies their legal theory.

**A pro se attorney can advocate and testify for themselves and another closely related party.**

The N.J. Advisory Comm. on Professional Ethics Op. 343 published July 29, 1976. interprets

Rule 3.7 as not preventing an attorney from acting pro se and additionally representing another

closely interested party. In the case subject to Op. 343, the firm representing the attorney and his

wife withdrew from representation. The attorney entered into representing himself and his wife.

The Opinion states: " The specific question is whether an attorney . . . may represent himself and

his wife in the action, or must he retain independent counsel. . . . [W]e conceive no ethical

consideration which would prevent the attorney from representing himself and his wife under the

circumstances. He has the same fundamental rights in this respect as any other individual"

Identically in our situation the counsel representing Radu and his fully owned COMPANY

withdrew from the case. Radu became a pro se plaintiff and attorney for the COMPANY. Radu

is representing his interest and the interest of the company he is entirely controlling.  The

COMPANY is represented without charge. Hiring a counsel is not possible as it would incur

substantial expenses and such funds are not available.

> "[A]ttorney-witness representing himself cannot be disqualified, under Rules 5–101(B)
> and 5–102(A) , to a situation where the attorney-witness was representing a limited
> partnership, of which he was the general partner, held that Rules 5–101(B) and 5–102(A)
> did not require the disqualification of an attorney-witness who was also the general
> partner of a limited partnership on whose behalf the action was brought."

BSW Development Group v.  City of Dayton, 1995 WL 1671908, (S.D.Ohio, September 13,

1995 )

> "When attorneys are themselves parties to litigation, including litigation involving a

> partnership of which the attorney is a partner, the right of litigants to represent themselves usually trumps disqualification under the advocate-witness rule, with the result that attorney-litigants may represent themselves pro se, as well as the partnerships of which they are members, notwithstanding that they will testify at the trial. N.Y.Ct.Rules, § 1200.21 [DR 5–102]."

> In re Estate of Walsh 17 Misc.3d 407, 840 N.Y.S.2d 906 (N.Y.Sur.,2007)

Both our Third Circuit and the neighboring New York state have a bright line exception from the attorney-witness rule for the pro se attorney representing an entity in which they have an interest, specifically a partnership. These facts are identical with the facts in our case. Radu is both a pro se litigant and an attorney for the COMPANY he is the president, and allegedly he could be a witness. More, the COMPANY  was considered a partnership under federal tax law (see http://www.irs.gov/businesses/small/article/0,,id=98277,00.html). The LLC is a state law creation. The LLC is not recognized as a business form per se under federal law. The LLC must elect the way it wanted to be taxed between three options: solo, partnership or corporate.  The LLC COMPANY in our case was taxed as a partnership ( see form K1 included in Defendants Declaration of Counsel Exhibit B, page 19 of 21 ). Therefore the aforementioned cases describe identical facts. In conclusion the attorney-witness rule does not apply in our case and the motion to dismiss attorney should be denied.

## Radu has the right to represent himself in Federal Courts

"In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654 .

In present case Radu became a pro se litigant after his lawyer withdrew from the case with court approval. Radu can advocate and also be the witness for his case.

**Radu will not testify as an attorney for Synclabs because he has the right testify as a pro se litigant not as an attorney.**

Radu acquired the direct knowledge of facts in his this case because of his position as CEO and owner of the COMPANY.  Radu represents himself as a pro se litigant.  Radu became an attorney after the commencement of this action on May 2011. Therefore Radu must testify in the posture that led to the knowledge about the case which is the pro se plaintiff and not as an attorney for co-plaintiff  Sync Labs. It will be improper and unfair to deny the right of the pro se plaintiff  to testify under the authority and persona it was at the moment of the events he would testify about. Contending that Radu would testify as an attorney under circumstances is frivolous and only serves the strategic purpose to inflict a devastating consequence of dismissing the co-plaintiff COMPANY owned and represented by Radu. It is also possible that during litigation the company would have the means to pay another lawyer if would acquire sufficient capital or start commercial activity. It is the hardship and the short deadline of three weeks required by the court to find a replacement attorney that determined Radu to make the appearance as attorney on file for the COMPANY. Additionally any costs incurred by the company in this litigation will be covered entirely by no other person but Radu. Any harm or benefit to the company would reflect directly on Radu.

**This motion cannot serve the stated purpose to eliminate the attorney-witness situation this motion would only deny the day in court for the Plaintiff  COMPANY.**

As a pro se plaintiff Radu has the legal right to be an advocate and witness independently from being the advocate for the COMPANY plaintiff. There is no shown prejudice Defendants would suffer based on R.P.C. 3.7 if Radu would continue to advocate for the COMPANY in addition to his pro se posture. Radu's disqualification as attorney for one of the plaintiffs would not bring the relief claimed by Defendants. It would only remove the COMPANY as a Plaintiff because

17

the COMPANY must be represented in court by an attorney and the COMPANY owner has no resources to pay for another lawyer. More the lack of funds is the results of Defendants wrong doings. Assuming hypothetically that Defendants successfully disqualify Radu as attorney for the COMPANY and a competent lawyer assumes representation of the COMPANY without pay, then Defendants would still have Radu as both witness and as opposing counsel in this trial as if the motion would not be successful. Then if there is no difference for what Defendants advocates regardless of the court decision, it naturally raises the question what are Defendants trying to achieve with this motion? Respectfully we believe that it is circumstantially evident that a strategic, frivolous, unfair and inequitable reason caused the filing this motion. The reason is denying the day in court of the COMPANY plaintiff. Defendants know they created the financial hardship for Plaintiffs. They deliberately used this hardship to inflict damage in the past. Now Defendants are trying one more time us to achieve their harmful purpose.

**A lawyer has the right to make the proper decision in representing clients**

In *Opinion 243,* 95 *N.J.L.J.* 1145 (1972), the ACPE recognized the inappropriateness of usurping the "judgment [that must] be made by each attorney as the situation arises ..." It noted that "any attempt by this committee to promulgate guidelines would be presumptuous and raise the inference that lawyers could not be trusted to make proper decisions" as to whether they could adequately represent both parties. *Accord Opinion 527,* 113 *N.J.L.J.* (1984). In our case Radu as lawyer has the right to decide if he can represent the parties. The COMPANY has the right of its attorney of choice and especially of the attorney it can afford. Denying this right under the circumstances would deny the access to justice. This is another reason why we are respectfully asking for the denial of this motion.

18

**An attorney witness should not be disqualified from pre trial proceedings**

In our Third Circuit attorney disqualification based on R.P.C. 3.7  is generally not applied to the

pre trial proceedings.

> " [A]n attorney may continue to represent a client in an action in which he will be called as a witness up to the actual trial in the case. See, e.g., Culebras Enters. Corp. v. Rivera–Rios, 846 F.2d 94, 99–101 (1st Cir.1988). FN5 Thus, even if Cullen may not act as trial counsel for Motorola or the other defendants, he may continue to represent them up to the actual commencement of the trial."
> Electronic Laboratory Supply Co., Inc. v. Motorola, Inc., 1990 WL 96202, (E.D.Pa., July 03,

1990 ).

New Jersey accepts that a lawyer can represent a client in pre-trial procedures. Freeman quoted

by Defendants stated otherwise and was sharply criticized in Main Events Productions, LLC v.

Lacy 220 F.Supp.2d 353, 358 (D.N.J.,2002).  Main events finds  that Rule 3.7 disqualification

must be limited to the trial and does not concern the pre-trial procedures:

> "The conclusion drawn in Freeman that RPC 3.7 applies to all pre-trial activity is at odds with the clear language of RPC 3.7. While there is no clear authority from the New Jersey Supreme Court regarding this issue, a number of other courts interpreting RPC 3.7 have concluded that an attorney who will testify at trial need not be disqualified from participating in pre-trial matters. Gordon v. Bechtel, Int'l, No. 01-132, 2001 WL 1727251, at *5 (Dist.V.I. Dec. 28, 2001)("In any event, the rule only applies to trial and the attorney may continue to represent the client up to trial"); George v. Wausau Ins. Co., No. 99-6130, 2000 WL 276915, at *2-3 (E.D.Pa. Mar. 13, 2000);. . . cf. Massachusetts School of Law v. American Bar Association, 872 F.Supp. 1346, 1380-1381, aff'd, 107 F.3d 1026, 1044 (3d Cir.1997).FN5 . . . This construction of RPC 3.7 not only is in accord with the plain language of the Rule, it also is consistent with its intent. The Rule is designed to prevent a situation in which at trial a lawyer acts as an attorney and as a witness, creating the danger that the fact finder (particularly if it is a jury) may confuse what is testimony and what is argument, and otherwise creating an unseemly appearance at trial. Limiting the disqualification to advocacy at trial achieves these objectives and at the same time respects a client's right to be represented generally by an attorney of his choice."

In the unlike event that this court would grant Defendants motion, the motion should be limited

to the trial. This would give the COMPANY the chance to demand its rights and if funds would

become available than continue the litigation with another attorney.

**The Federal Bench can distinguish the dual role played by an advocate-witness wich eliminates the reason and the need to disqualify the advocate-witness.**

Third circuit district court found that "risk that testimony would be given undue weight by factfinder was minimized by fact that it was bench trial." Commonwealth v Gibson (1996, Pa Super) 670 A2d 680. This case is a bench trial therefore there is little concern for the confusion caused by Radu's dual role as attorney-witness and therefore the motion to disqualify should be denied.

**The motion to disqualify counsel is disfavored due to the devastating consequences for oponent and strategical advantage for proponent.**

> "Disqualification of counsel is a harsh discretionary remedy which must be used sparingly. In *Dewey v. R.J. Reynolds Tobacco Co.,* 109 N.J. 201, 536 A.2d 243 (1988), the Supreme Court instructed us on the balancing required before imposing a sanction as severe as disqualification. The Court noted that "a motion for disqualification calls for us to balance competing interests, weighing the `need to maintain the highest standards of the profession' against `a client's right to freely choose his counsel."' *Id.* at 218, 536 A.2d 243."

Cavallaro v. Jamco Property MGT. *760 A.2d 353,362 (N.J. Super., 2000)*

Courts are reluctant to infringe the litigant rights of counsel of choice especially as motions to disqualify counsel could and are easy to use for strategic purposes. "Because disqualification of counsel can have far-reaching, even devastating implications, motions to disqualify are generally disfavored. Essex Chem. Corp. v. Hartford Acc. & Indem. Co., 993 F.Supp. 241, 246 (D.N.J.1998);" Carlyle Towers Condo. Ass'n v. Crossland Sav., 944 F.Supp. 341, 345 (D.N.J.1996).

A bright line defining the necessary witness for an attorney-witness, the level of burden to be carried by the movant in proving the necessity is described by the court in Oswell v. Morgan

20

Stanley Dean Witter & Co., Inc. 2007 WL 2446529, 3 (D.N.J.) (D.N.J.,2007):

> "The party seeking disqualification bears the burden of showing that continued
> representation by the lawyer would violate the disciplinary rules. *See Kroungold v.
> Triester,* 521 F.2d 763, 766 (3d Cir.1975).
> In addition, the party seeking to disqualify an attorney must do more than simply make
> representations that a lawyer is a necessary witness for the attorney to be disqualified.
> *J.G. Ries & Sons, Inc. v. Spectraserv, Inc.,* 384 N.J.Super. 216, 230
> (App.Div.2006)("Such a mere representation, however, does not satisfy the threshold
> requirements of RPC 3.7, which specifies a likelihood that a lawyer will be a necessary
> witness.") Indeed, the party seeking to disqualify must put forth evidence that establishes
> the likelihood that the attorney will be a necessary witness at trial and if it is unclear from
> the record as to whether or not the attorney's testimony is necessary, the motion should be
> denied. *See Host Marriott Corp. v. Fast Food Operators, Inc.,* 891 F.Supp. 1002, 1010
> (D.N.J.1995)."

Existence of alternative ways to prove the facts eliminate the need to disqualify the counsel

according to R.P.C. 3.7: "If the information possessed by the attorney can be introduced through

other documents or witnesses, the attorney is not a necessary witness. "Bailey v. Gibbons, 2011

WL 4056202, at *15(D.N.J. Sep 12, 2011)  ( quoting Oswell v. Morgan Stanley Dean Witter &

Co., 2007 WL 2446529, at * 4 ( D.N.J. Aug. 22, 2007))

   The alternative evidence that is sufficient to dismiss the necessary witness allegation is

defined as: various subject related emails, attorney testimony at the hearing of the motion to

disqualify and other testimonies:

> "In her opinion denying Rocco's motion to disqualify, Judge Shwartz found that there
> existed ample alternative forms of evidence . . . Judge Shwartz pointed to a variety of
> evidence in the record supporting Rocco's defense, including (1) an email from Marks
> indicating that he knew Rocco was no longer Bailey's attorney as of December 2007
> (before the police incident); (2) Rocco's testimony that her representation of Bailey was
> limited to marital matters; (3) Rocco's testimony about what she knew about the incident;
> (4) emails demonstrating that Marks represented Bailey as early as March 2008; and (5)
> Marks's testimony at the hearing on the motion to disqualify, which Rocco may employ
> at trial. (Op. Tr. 23–25.) Given this volume of evidence, the Court concludes that Judge
> Shwartz did not err in concluding that Marks is not a necessary witness, and her denial of
> Rocco's motion to disqualify Marks is affirmed."

Bailey v. Gibbons Slip Copy, 2011 WL 4056202 (D.N.J.)

In our case there is an abundance of the type of alternative evidence as the one cited in

Bailey v. Gibbons:  more than 2000 emails , recorded electronic communications, voice

recording,   alternative witnesses, government records, public documents.

Therefore Radu's testimony is not a necessary testimony for the purpose of R.P.C 3.7.

**If the court would find for Defednant sufficient time should be provided before
disqualifying the Plaintiff COMPANY.**

The disqualification of the counsel has devastating effects on the client. Sufficient time is

generally provided before drastic actions are taken by the court. In Freeman v. Vicchiarelli 827

F.Supp. 300, 306-307 ( d.N.J. 1993) the judge recognized possibility of adverse effects of the

order: "To mitigate any possible adverse effects as a result of this ruling, I will stay all discovery

and motion practice in this case until September 10, 1993 to allow Plaintiff enough time to

secure alternate counsel." The court In Freeman allowed  78 days for finding replacement

counsel. "IT IS this 24th day of June, 1993 hereby . . .  It is FURTHER ORDERED that all

discovery and motion practice in this case be stayed until September 10, 1993, to permit plaintiff

adequate time to secure alternate counsel."


In conclusion the motion to dismiss attorney Codrut Radu Radulescu should be dismissed

because of the substantial hardship it would inflict on the Plaintiffs, because Plaintiffs should not

benefit from their own wrong doing, because Defendants did not meet the required burden of

proof and because the facts in this case match cases on point that are exception from

disqualification of a potential attorney-witness situation.


Respectfully submitted                                    DATED May 2, 2012

22

Codrut Radu Radulescu Atty

By /s Codrut Radu Radulescu
65 Longview St
West Orange, NJ 07052
radu@synclabs.com
Attorney for Plaintiff


**DOCUMENT ELECTRONICALLY FILED**