NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SYNC LABS LLC AND CODRUT RADU RADULESCU, <br><br> Plaintiffs, <br><br> v. <br><br> FUSION MANUFACTURING and MICHAEL FERCHAK, <br><br> Defendants. | **OPINION** <br><br> Civ. No. 2:11-03671 (WHW) |

**Walls, Senior District Judge**

Plaintiff Radulescu moves for summary judgment. Defendant opposes. The motion has been decided from the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. Plaintiff's motion for summary judgment is granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Codrut Radu Radulescu ("Radulescu") is a citizen of New Jersey. Am. Compl. ¶ 1 (ECF 9). Plaintiff Sync Labs, LLC ("Sync Labs") is a New Jersey limited liability company ("LLC"). *Id.* ¶¶ 2, 10. Defendant Michael Ferchak ("Ferchak") is the founder and managing director of Defendant Fusion Manufacturing. Ferchak E-mail, August 9, 2010 at 2 (ECF 93-12). Plaintiff's amended complaint states that Defendants are Florida residents. Am. Compl. ¶¶ 3, 6.[1]

---

[1] Defendants deny this but provide no support for this denial. Am. Countercl. ¶¶ 3, 6 (ECF 20).

1

Radulescu claims that he and Ferchak met in 2004 on a flight from Asia to the United States. Am. Compl. ¶ 4. Radulescu at the time was employed on the "advanced system prototyping team" for Agere systems. *Id.* ¶ 8. In July 2007, after losing his job at Agere, Radulescu founded a New Jersey LLC, Phoenix Labs, which later became Sync Labs. *Id.* ¶ 10; State LLC Cert., August 4, 2010 (ECF 98-5).

Ferchak became involved in Sync Labs by contributing services and capital. In 2008, the parties entered an oral agreement, according to which Ferchak would work for Sync Labs as Vice President of Operations. Am. Compl. ¶ 11. This agreement was memorialized in a written Work Made for Hire Representation/Warranty Agreement (the "Work for Hire Agreement"), which Ferchak signed on January 27, 2010, but which appears to be retroactive to January 2008. Work for Hire Agreement at 2 (ECF 93-6). According to this agreement, Ferchak agreed to work part-time (about 50 hours a month) over a four-year period. *Id.* He was to be compensated on an hourly basis, receiving 8.33 Class B Units of Profit Interest (BUPIs) for each hour of work. *Id.* The BUPIs did not give Ferchak voting rights and are not transferable without Radulescu's consent. *Id.*

On July 2, 2009, the parties entered a "Funding Agreement," according to which Ferchak agreed to provide $250,000 in "matching funds" in order to make Sync Labs eligible for an "Edison grant" from the New Jersey Commission on Science and Technology ("NJCST"). Ferchak Letter, Jan. 2, 2009 (ECF 84-5), Funding Agreement, July 2, 2009 (ECF 84-15). This agreement provided that Ferchak's capital infusion entitled him to "the equivalent share of the Company ownership," to be determined at the time of the disbursement "as the parties would agree." Funding Agreement, July 2, 2009 (ECF 84-15). In August 2009, Ferchak transferred $20,000 to Sync Labs in exchange for 4,000 Class A UPIs ("AUPIs"). Pl.'s Decl. ¶ 10 (ECF 84-

2). This was memorialized in an "Investment Transaction Receipt" which the parties signed about seven months later. *Id.*, Receipt, March 30, 2010 (ECF 84-9).

But by then, the relationship had soured. In December 2009, Ferchak and Radulescu began fighting about a fair valuation for Sync Labs and what Ferchak's stake would be worth. *See, e.g.*, Ferchak e-mail Dec. 8, 2009 (ECF 84-7). Because they could not reach an agreement, Ferchak sent a letter to the NJCST dated January 27, 2010, informing the NJCST that he was withdrawing his $250,000 pledge of support. Ferchak Letter, Jan. 27, 2010 (ECF 84-9 at 21). On May 30, 2010, Ferchak tendered his resignation from Sync Labs, effective April 1, 2010. Hager Decl. ¶ 25 (ECF 93-1). Throughout the summer of 2010, Ferchak demanded that Radulescu refund the $20,000 he had provided to Sync Labs in 2009, but Radulescu refused. *See, e.g.*, *id.* ¶¶ 26, 28-29.

**I.     Summary of Claims**

Plaintiff advances the following causes of action: breach of contract, Am. Compl. ¶¶ 96-97; violation of New Jersey's LLC Act, *id.* ¶¶ 98-100; fraud, *id.* ¶¶ 101-04; theft, *id.* ¶¶ 105-06; breach of implied duties and covenants, *id.* ¶¶ 107-09; tortious interference with a prospective economic advantage, *id.* ¶¶ 110-12; breach of warranties, *id.* ¶¶ 113-15; promissory estoppel *id.* ¶¶ 116-21; conversion, *id.* ¶¶ 122-27; and defamation, *id.* ¶¶ 128-33.

Defendants have filed the following counterclaims: breach of contract, Am. Countercl. ¶¶ 16-18); violation of the New Jersey Wage and Hour Law, in particular the Wage Payment Law (NJWPL), *id.* ¶¶ 19-20; and violation of the New Jersey Uniform Securities Law (NJUSL), *id.* ¶¶ 21-25).

Radulescu moved for judgment on the pleadings on Defendants' counterclaims and on Plaintiffs' first cause of action for breach of contract as it pertains to the Work for Hire

Agreement. Pl.'s Mot. J. Pleadings (ECF 84). Defendants chose not to submit any further evidence. Defs.' Letter, Aug. 5, 2013 (ECF 100). The Court converted this motion to a motion for summary judgment because "both parties proffer[red] evidence beyond the pleadings that are likely to facilitate the disposition of this case." Order Converting to Summ. J., July 16, 2013 (ECF 96). Radulescu, appearing pro se, has been disqualified from representing Plaintiff Sync Labs LLC, and so moves only on his own behalf. Order Granting Mot. Disqualify, June 7, 2012 (ECF 37).

Both parties are in violation of multiple Local Civil Rules and orders of this court. After the Court converted Plaintiffs' motion to one for summary judgment and gave the parties until August 1, 2013, to deliver further evidentiary submissions, Radulescu submitted materials on August 2. Order Converting to Summ. J., July 16, 2013 (ECF 96), Radulescu Decl. (ECF 98). Radulescu failed to provide courtesy copies of his August 2 submissions—as required by Local Civil Rule 7.1(g)—until almost three weeks after the fact. Both parties failed to accompany their motions with a statement setting forth "material facts as to which there does not exist a genuine issue," as required by Local Civil Rule 56.1. The Court has chosen to waive these violations, but the parties should both be on notice that the Court expects a higher degree of compliance with both the Federal Rules of Civil Procedure and the Local Civil Rules as this matter proceeds. Where the parties have failed to develop the factual record, the Court has considered facts to be undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2, 3).

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties will not defeat a motion for summary

judgment unless it is both genuine and material. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott*, 550 U.S. at 380 (2007). A factual dispute is genuine where a reasonable trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to "show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP.*, 494 F.3d 418, 424 (3d Cir. 2007) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the movant has carried this burden, the burden shifts to the non-moving party to show specific facts that would allow a reasonable trier of fact to find in its favor. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 323. This requires "more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and quotation marks omitted); *see also Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) ("the evidence must be more than a scintilla").

At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," but to determine whether there is a genuine issue of fact for trial. *Anderson*, 477 U.S. at 249. If a genuine dispute exists as to a material fact, the court must view that fact in the light most favorable to the non-moving party and "all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). But if the non-moving party fails to provide evidence supporting an assertion of fact or addressing the moving party's assertion of fact, the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

## DISCUSSION

Defendant Ferchak worked as an hourly employee for Sync Labs and also invested money in Sync Labs.

In exchange for his hourly work, Ferchak received BUPIs. Radulescu's first cause of action and Ferchak's counterclaims for breach of contract and violation of New Jersey's Wage Payment Law regard these BUPIs. The Court addresses these claims in Section I.

In exchange for his investment, Ferchak received AUPIs. His counterclaim for violation of New Jersey's Uniform Securities Law regards these AUPIs. The Court addresses this claim in Section II.

**I. Ferchak's Hourly Work (BUPIs)**

Defendants' first two counterclaims involve the hourly work Ferchak completed for Sync Labs in exchange for 8.33 BUPIs per hour. There is no genuine dispute about any material fact in these two counterclaims and so summary judgment is appropriate.

> **A. Ferchak's Counterclaims for Breach of Contract and Violation of the New Jersey Wage and Payment Law**

Radulescu's motion for summary judgment as to Defendant's counterclaims for breach of contract and violation of New Jersey's Wage Payment Law (NJWPL) is granted.

"Where the contract is clear and unambiguous, the determination of the parties intent is purely a question of law within the exclusive province of the trial court." *J.I. Hass Co., Inc. v. Gilbane Bldg. Co.*, 881 F.2d 89, 92 (3d Cir. 1989). A breach of contract claim is sufficiently plead if a claimant alleges "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). As for the NJWPL claim, the statute appears to require nothing more at the pleading stage beyond the

presence of an employer-employee relationship and an allegation of unpaid wages, and appears to allow for a private right of action. *See Carita v. Mon Cheri Bridals, LLC*, 10-cv-2517, 2012 WL 2401985 at *10-12 (D.N.J. June 25, 2012) (finding a private right of action valid under the NJWPL).

Assuming for the purposes of this motion that Defendants' pleadings are adequate under these standards, there is no genuine dispute about any material fact relevant to either of these causes of action. Defendants' counterclaims allege that Ferchak "did not receive the 'profit interest' to which he was entitled from the Plaintiffs," Am. Countercl. ¶3; that "Plaintiffs failed to compensate him" under the work made for hire agreement, *id.* ¶17; and that he suffered damage due to "Plaintiffs' failure to fully and properly compensate [him] for all services he rendered," *id.* ¶ 20. Radulescu has satisfied his burden by demonstrating an absence of any genuine dispute as to these material facts—namely, that Ferchak was credited with 8,692 BUPIs for his hourly work, the full extent of the compensation to which he was entitled. *See* Pl.'s "Capitalization Table," June 19, 2009 (ECF 98-22).

In response, Defendants do nothing to demonstrate that a genuine issue exists, choosing to rely on the conclusory allegations in their counterclaims. For instance, Defendants have failed to argue that Ferchak worked some number of hours for which he was not credited, or that he was entitled to something more than the 8,692 BUPIs with which he was credited. On July 29, 2010—nearly four months after the effective date of his resignation from the company—Ferchak wrote to Plaintiff Radulescu, "I will write off my entire quantity of profits interest (8692) from the work I did while at Sync Labs." Ferchak E-mail, July 29, 2010 at 3 (ECF 93-12). This e-mail, written after the effective date of Ferchak's resignation, confirms Defendants' understanding that this was the "entire quantity" of compensation to which Ferchak was entitled for his services.

While he made various demands of Radulescu for monetary compensation, *see, e.g.*, Ferchak E-mail, Jan. 27, 2010 (ECF 84-14), he has not submitted any evidence to support a claim that he was entitled to be compensated in any other way or for any other amount.

It is clear that Ferchak regrets agreeing to work for BUPIs rather than monetary compensation. Ferchak may have access to other remedies for liquidating his equity interests, but no such claim is before the Court. Despite the fact that Radulescu has been disqualified from representing Plaintiff Sync Labs, summary judgment is appropriate as to all parties due to a failure on the part of Defendants to demonstrate any genuine dispute as to a material fact. *See* Fed. R. Civ. P. 56(e) (explaining that where a party fails to address an assertion of fact, the court may "grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it"); *see also Celotex*, 477 U.S. at 326 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence.").

### B. Radulescu's Claim for Breach of Contract

Radulescu seeks summary judgment for his claim that Ferchak breached the Work for Hire Agreement by resigning and refusing to complete contracted work as Vice President of Operations. Pl.'s Mot. J. Pleadings at 3. Plaintiff's motion for summary judgment is granted.

A claimant may prove a breach of contract if he proves the existence of a contract, breach, damages and that the claimant performed his own contractual obligations. *Frederico*, 507 F.3d at 203. An employee can be liable just as an employer can: "The employee is liable to the employer for a breach of the contract of employment . . . . In the absence of a waiver of the breach, the employer may recover damages from his or her employee for any failure to perform the duties devolving on him or her under the employment contract." 30 Corpus Juris Secundum Employer-Employee § 156 (2013).

Radulescu has demonstrated that Ferchak breached his employment contract. It is evident that the parties' Work for Hire Agreement is an employment contract, that it is a contract for a definite period of employment and that it contains no provisions regarding who may terminate it and under what circumstances. Work for Hire Agreement (ECF 93-6). The second element is satisfied because Ferchak contracted to work for a definite term of four years and unilaterally terminated his employment a little more than two years into this term. Hager Decl. ¶ 25. The third element is satisfied because Radulescu incurred costs for replacing Ferchak, though the scope of those damages is to be determined. The fourth element is satisfied because, as the Court has found, Plaintiff satisfied his contractual obligations by crediting Ferchak with 8,692 BUPIs.

Defendants' response is confined to a single paragraph, complaining that the claim is improper because of Radulescu's disqualification from representing Plaintiff Sync Labs. Defs.' Mot. Opp. J. Pleadings at 12 (ECF 93). But the Work for Hire Agreement is between Radulescu and Ferchak, not between Sync Labs and Ferchak. Work for Hire Agreement at 2 (ECF 93-6). Defendants' claim that this issue is "factually disputed and inappropriate for summary judgment disposition" is conclusory and unsupported by anything in their submissions. Defs.' Mot. Opp. at 12. Because Defendants have failed to properly support or address these assertions of fact, the Court considers them undisputed. Fed. R. Civ. P. 56(e)(2), (3).

Summary judgment is granted with a hearing on damages to be conducted once all other claims have been resolved.

## II. Ferchak's investment (AUPIs)

Plaintiff Radulescu's motion for summary judgment as to Defendants' counterclaim for violation of the New Jersey Uniform Securities Law (NJUSL) is denied.

Radulescu makes seven arguments for the dismissal of Ferchak's NJUSL claims and the Court has considered them all. In sum, Ferchak's claim does not violate the statute of limitations; it is adequately plead for purposes of Federal Rules of Civil Procedure 8(a)(2) and 9(b); and it adequately pleads the elements of a prima facie securities fraud. Though Radulescu is correct that Ferchak's interest in Sync Labs is exempt from the registration requirements of the NJUSL, it is still potentially subject to liability under N.J.S.A. 49:3-71.

The question of liability under the NJUSL hinges on whether or not the interest is a "security" under that statute. That question has been complicated by the poor job the parties have done describing the AUPIs and what rights and privileges they grant their holder. Because Sync Labs is a limited liability company, the Court has analyzed the AUPIs as membership interests in an LLC. The Court finds that though the interests are not an "investment contract," they may be "stock." Because a genuine issue of material fact remains on that point, summary judgment is not appropriate.

### A. Ferchak's claim does not violate the statute of limitations

The NJUSL has a two-year statute of limitations: "No person may bring an action under this section . . . more than two years after the time when the person aggrieved knew or should have known of the existence of his cause of action." N.J.S.A. 49:3-71(g).

Defendants allege that at the time of the $20,000 investment, Radulescu represented that Ferchak would have the right to demand a refund. Am. Countercl. ¶ 4. On March 30, 2010, Ferchak signed a transaction receipt for that investment, suggesting that he did not yet sense fraud or foul play. Receipt, March 30, 2010. He claims that he did not realize that Radulescu held a different understanding of their agreement until Ferchak demanded the refund in the summer of 2010. Hager Decl. ¶¶ 26-29. Viewing the facts in the light most favorable to the non-

moving party, a rational trier of fact could determine that Ferchak believes Radulescu had made a promise and that Radulescu reneged on that promise. Because Ferchak's alleged discovery occurred, at the earliest, on March 31, 2010, the filing of his counterclaim in January 2012 was timely.

### B. Ferchak's claim satisfies Federal Rule of Civil Procedure 9(b)

"Independent of the standard applicable to Rule 12(b)(6) motions, [Rule] 9(b) requires that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.' This particularity requirement has been rigorously applied in securities fraud cases." *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) (citation omitted). The requirements of this rule typically require claimants to allege the "who, what, when, where, and how" of the fraud, although it can also be accomplished by "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* (quotations and citation omitted). The Rule 9(b) standard applies to claims under the NJUSL's civil liability provision. *Home Care Indus. v. Murray*, 00-cv-3305, 2002 WL 32627452 at *7 (D.N.J. Nov. 27, 2002). The statute also places a burden on the claimant to plead that the alleged committer of fraud "knew of the untruth or omission and intended to deceive the buyer" and "that buyer has suffered a financial detriment." N.J.S.A. 49:3-71(b)(1).

Ferchak was not required to plead the five elements of common law fraud, only to satisfy Rule 9(b). He has done so, but only barely; the counterclaims are quite vague. Defendants allege generally that Radulescu "engaged in fraud and/or deceit" under the NJUSL (ECF 20 Countercl. ¶ 22), that his "conduct was unlawful" under the NJUSL (*id.* at ¶ 23), that he "violated Defendant Ferchak's right against being defrauded as protected under the [NJUSL]" (*id.* at ¶ 24), and that Ferchak is entitled to "all remedies available under the [NJUSL], including, without

11

limitation, those identified in N.J.S.A. 49:3-71" (*id.* at ¶ 25). He has failed to identify under which subsection of the civil liability provision his claim arises.

But, drawing all justifiable inferences in the Defendants' favor, summary judgment is not appropriate on this claim. The Court will assume that Defendants' claim about the refund promise arises under N.J.S.A. 49:3-71(a)(2) (untrue statement of material fact) and that his claim about Radulescu's misuse of funds arises under N.J.S.A. 49:3-71(a)(4) ("engaging in any act, practice or course of business which operates . . . as a fraud or deceit"). Though the pleadings are not perfect, Defendants have satisfied Rule 9(b) by injecting precision and substantiation into their allegations. Ferchak says he invested $20,000 in Radulescu's company according to a promise that this amount could be refunded to him upon demand and that Radulescu would use this money to further the company's ends. Ferchak alleges that Radulescu misled him as to each of these facts, that Radulescu did so deliberately and that Ferchak suffered damages as a result. Radulescu maintains that he never made this promise and that the money was used for legitimate reasons because it was wired to the company bank account. This dispute is genuine and the facts at issue are material.

### C. Defendants' claim is adequately plead under Rule 8(a)(2) and alleges plausible facts for a prima facie securities fraud

Radulescu's arguments that Defendant's counterclaims do not satisfy Federal Rule of Civil Procedure 8(a)(2) and fail to state the prima facie elements of a securities claim are disjointed and difficult to follow, but the Court has considered them to the best of its ability. They appear to merge elements of Radulescu's arguments about the proper pleading standard, *see* Pl.'s Mot. Supp. J. Pleadings at 19-20, with elements of his arguments about whether or not the security was exempt, *id.* at 20. The Court has already addressed the pleading issue and now turns to the exemption issue.

To the extent that Radulescu's argument hinges on his assertion that "Defendant does not know what he purchased or what it means," *id.* at 18, and similar remarks, his reliance is misplaced. It is true that some comments from the hearing before Magistrate Judge Arleo, taken out of context, support such an assertion: asked to define a "unit of profit interest," Defendants' counsel responded, "Beats me, Your Honor." Disqual. Hr'g Tr. 6:19, June 7, 2012 (ECF 51-2). But this does not render Defendants' claims invalid. To the contrary, they indicate only that there is a genuine dispute about the nature of the investment which Ferchak purchased from Radulescu, and thus confirm that summary judgment is not appropriate.

### D. Ferchak's investment is exempt from registration under the NJUSL

Radulescu is correct that the investment at issue is exempt from the registration requirements of the NJUSL.

The NJUSL's civil liabilities provision creates liability for violation of N.J.S.A. 49:3-60, which provides that "It is unlawful for any security to be offered or sold in this State unless [t]he security or transaction is exempt under [N.J.S.A. 49:3-50]." Under that subsection, a transaction is exempt if it

> results in sales to not more than 10 persons . . . in this state during any period of 12 consecutive months . . . if (i) the seller reasonably believes that all buyers are purchasing for investment, and (ii) no commission or other remuneration is paid or given directly or indirectly for soliciting any prospective buyer in this State, and (iii) the securities are not offered or sold by general solicitation or any general advertisement.

N.J.S.A. 49:3-50(b)(9).

Ferchak's $20,000 investment in Sync Labs is exempt from the registration requirements of the NJUSL. It is clear from the parties' submissions that Radulescu reasonably believed that Ferchak was purchasing for investment. Even if Defendants were right that Radulescu misused the $20,000 investment, there is no plausible claim that he did so as some kind of commission to

himself for soliciting Ferchak. Similarly, there is no allegation that Radulescu sought similar investments via general solicitation or advertisement.

Ferchak's investment is exempt under NJSA 49:3-50(b)(9), but this only exempts the investment from the provisions of NJSA 49:3-60 (registration) and 49:3-63 (filing of prospectus and other communications with the regulator). NJSA 49:3-50(b). It does not affect the applicability of the civil liability provisions in NJSA 49:3-71.

### E. A genuine dispute remains as to the material fact of whether the AUPIs are "securities" under the NJUSL

The parties disagree about whether the 4,000 AUPIs Ferchak purchased are "securities" under the NJUSL. There are genuine disputes about material facts on this issue.

The Uniform Securities Law, which New Jersey has adopted, defines "security" broadly. N.J.S.A. 49:3-49(m). It includes several distinct categories of well-defined securities, such as "any note; stock; treasury stock; bond; [or] debenture," as well as several catch-all categories such as "evidence of indebtedness," "certificate of interest or participation in any profit-sharing agreement," and "investment contract." *Id.* This definition is essentially identical to the definition in the federal securities laws, and the statute instructs courts to interpret the definitions consistently with their federal analogues. N.J.S.A. 49:3-75. *See AMR Realty Co. v. State, Bureau of Sec.*, 373 A.2d 1002, 1004 (App. Div. 1977) (finding that N.J.S.A. 49:3-75 empowers the court to review cases interpreting the federal Securities Act of 1933 when determining whether an investment is a security under the NJUSL).

The United States Supreme Court has not provided a uniform test for courts to determine whether an investment or transaction is a "security," and in particular whether a membership interest in an LLC is a "security." Radulescu argues, without explanation, that the relevant test for Ferchak's LLC interest is the "investment contract" test, also known as the "economic

reality" test, from *S.E.C. v. Howey*, 328 U.S. 293 (1946). This is not a universal test for evaluating all investments and transactions. The Supreme Court has expressly stated that the *Howey* test was "designed to determine whether a particular instrument is an 'investment contract,' not whether it fits within *any* of the examples listed in the statutory definition of 'security.'" *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 691 (1985) (emphasis original). An investment may not be an "investment contract" and still fall within the protection of the securities laws.

Courts have considered that an LLC interest may be a "security" either as an "investment contract" or "stock." The Court has considered both of these possibilities and finds that while Ferchak's LLC interest is not an "investment contract," a genuine issue of material fact remains as to whether it is "stock."

### a. Ferchak's LLC interest is not an "investment contract"

The *Howey* Court explained that "investment contract" is a term of art for purposes of the securities laws, and a transaction will only fall within that term if "the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." 328 U.S. at 301. Since then, much attention has focused on the final prong of this test, the "solely" requirement, and courts have generally found that term to be unduly harsh. The Third Circuit has held that "the term 'solely,' as used in the Howey test . . . is not to be read literally when considering the efforts made by an investor." *Goodwin v. Elkins & Co.*, 730 F.2d 99, 103 (3d Cir. 1984) (*citing SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476 (9th Cir. 1973)). The Third Circuit has also praised—if not explicitly adopted—the Fifth Circuit's test, which finds that an investor is not a "passive investor" relying "solely" on the efforts of others only if: "(1) an agreement among the parties leaves so little power in the hands of the [investor] that the arrangement in fact distributes power as would a limited partnership; or (2) the [investor]

15

is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his . . . powers; or (3) the [investor] is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful . . . powers." *Goodwin*, 730 F.2d at 106 (*quoting Williamson v. Tucker*, 645 F.2d 404, 424 (5th Cir. 1981)).

The Third Circuit has not evaluated when and whether an interest in an LLC will be a "security" under the securities laws. But in *Goodwin*, it found that even where a general partner felt like he had been effectively excluded from the partnership, he was still technically entitled to "a quantum of powers and responsibilities which, as a matter of law, would preclude [his] interest from being a security under the [Exchange] Act." 730 F.2d at 107 (citing *Williamson*, 645 F.2d at 425). The fact that Goodwin had legal right to these powers was dispositive, regardless of his practical ability to exercise them. *Id.* at 104; *see also Steinhardt Grp. Inc. v. Citicorp*, 126 F.3d 144, 153-54 (3d Cir. 1997).

As with other investments, analysis of an LLC interest under *Howey* hinges on the "solely" prong. If the holder of the membership interest participates actively in the LLC (it is "member-managed"), a court is likely to find that he is not relying solely on the efforts of others and the interest is not a security. If the interest holder does not participate actively in the LLC (it is "manager-managed"), then a court is likely to find that he is a passive investor and the interest is a security.

The Fourth Circuit recently analyzed an LLC interest similar to Ferchak's and found that the investment was not a security under the "investment contract" test. In *Robinson v. Glynn*, a plaintiff investor exchanged $25 million for a 25% interest in an LLC. 349 F.3d 166, 168 (4th Cir. 2003). The panel held that the investment was not an "investment contract" because the

16

investor was actively involved in the management of the company, where his responsibilities included selecting external financial and legal consultants and serving on the board of managers. *Id.* at 170-71. It did not find persuasive that the membership interest certificates were labeled as "shares" and "securities." *Id.* at 172. It also did not find persuasive the investor's claim that he could not exercise management rights because he lacked the other member's technological expertise. As the court usefully explained,

> Business ventures often find their genesis in the different contributions of diverse individuals—for instance, as here, where one contributes his technical expertise and another his capital and business acumen. Yet the securities laws do not extend to every person who lacks the specialized knowledge of his partners or colleagues, without a showing that this lack of knowledge prevents him from meaningfully controlling his investment.

*Id.* at 171-72.

Ferchak's involvement in the management of Sync Labs was significant enough that he did not rely "solely" on the efforts of Radulescu to turn a profit on his investment. The Work for Hire Agreement which Ferchak signed gives him extensive management responsibilities, including administration and organization of the company, market research and investor relations, and notes among his credentials that he has a degree in electrical engineering and is "an expert in companies [sic] operations and manufacturing." Work for Hire Agreement at 2. He helped prepare the grant application to the NJCST. Grant Provisions, March 4, 2010 (ECF 84 at 20). He recruited and hired employees. Ferchak E-mails, Nov. 17-18, 2009 (ECF 84-16), Ferchak E-mail, Aug. 13, 2009 (84-17). He was not a passive investor, but rather a member-manager of Sync Labs. His investment in the AUPIs was not an "investment contract" within the NJUSL's definition of "security."

### b. A genuine dispute over a material fact remains as to whether Ferchak's AUPIs are "stock"

There remains a possibility that Defendant Ferchak's AUPIs may be "stock" within the NJUSL's definition of "security."

Under the Supreme Court's two-part test for whether an investment is a "stock," courts should first ask if the investment is labeled as "stock." *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 851 (1975). If it is, the court then "must also determine whether those instruments possess 'some of the significant characteristics typically associated with stock.'" *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 686 (1985) (*quoting Forman*, 421 U.S. at 851). Those factors are "(i) the right to receive [a pro rata] apportionment of profits; (ii) negotiability; (iii) the ability to be pledged or hypothecated; (iv) the conferring of voting rights in proportion to the number of shares owned; and (v) the capacity to appreciate in value." *Id.* The Fourth Circuit in *Robinson*, applying the *Forman/Landreth* analysis in the context of an LLC interest, explained that this test is a one-way ratchet: if an investment is labeled a "stock," it may not be, but if the investment is not labeled a stock, the analysis is over. *But see* Marc I. Steinberg & Karen L. Conway, *The Limited Liability Company As a Security*, 19 Pepp. L. Rev. 1105, 1116-19 (1992) (arguing that placing too much emphasis on the name of the instrument undermines the Supreme Court's directive to value substance over form). The panel in *Robinson* found that the nomenclature issue was dispositive: because the LLC membership interest was not labeled as "stock," that it shared some characteristics with stock was unavailing: it was not a security. 349 F.3d at 173.

The parties here appear to agree that the investment at issue is called a "unit of profit interest," but they disagree about what that means. When Magistrate Judge Arleo asked Defendant's counsel what a unit of profit interest was, counsel responded, "Beats me, Your

Honor." Disqual. Hr'g Tr. 6:19. But in one submission to the Court, Radulescu refers to the interest as "stock." Am. Compl. ¶ 89 ("Radulescu split '10 for 1' Sync Labs' UPI stock on January 2011 . . . .").

Assuming arguendo that the AUPIs are "stock," the Court then considers whether the AUPIs share the five characteristics of stock outlined in *Forman* and *Landreth*. The first factor is satisfied because, as Radulescu himself notes, the AUPIs give Ferchak "the right of a proportional return on the company profits." Pls.' Answer to Defs.' Am. Countercl. ¶ 2 (ECF 29). The fourth factor is satisfied because Radulescu describes the AUPIs as "voting shares." Am. Compl. ¶ 37 ("voting shares equals Units of Profit Interests or AUPI"). The fifth factor is satisfied because, given the parties' discussions about whether the AUPIs were worth five dollars, seven dollars or some other amount, it is clear they have the capacity to appreciate in value. Am. Compl. ¶¶ 74-75.

There is nothing in the record to determine whether the second and third factors are satisfied, that is, if the AUPIs are negotiable or may be pledged or hypothecated. This information likely resides in a "work statement" dated September 15, 2008, which Radulescu claims describes the "equity compensation terms and duties for all members of the LLC." Am. Compl. ¶ 13. The parties have, to the Court's confusion and frustration, not produced this document. These facts are material because they could affect the outcome of the suit, and the parties' dispute over this fact is genuine because a reasonable trier of fact could return a verdict for either party. The motion is denied.

## Conclusion

Plaintiff's motion for summary judgment on the First Count (breach of contract) and Second Count (NJ Wage and Hour Law) of Defendants' First Amended Counterclaim is granted. Plaintiff's motion for summary judgment on the Third Count (NJUSL) of Defendant's First Amended Counterclaim is denied. Plaintiff's motion for summary judgment on the First Count (breach of contract) of Plaintiffs' First Amended Complaint is granted.

September 4, 2013

>**/s/ William H. Walls**
>United States Senior District Judge