NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SYNC LABS LLC and CODRUT RADU RADULESCU, | : | |
| Plaintiffs, | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| FUSION MANUFACTURING and MICHAEL FERCHAK, | : | Civ. No. 11-3671 (WHW)(CLW) |
| | : | |
| Defendants. | : | |

**Walls, Senior District Judge**

Defendants Fusion Manufacturing and Michael Ferchak move for summary judgment against Plaintiff Codrut Radu Radulescu under Fed. R. Civ. P. 56(a). Defendants also ask the Court to reconsider its September 4, 2013 decision, which granted Mr. Radulescu summary judgment on his breach of contract claim, under Fed. R. Civ. P. 60(b)(2). ECF No. 197. Plaintiff opposes the motion and seeks to proceed to trial. ECF No. 201. The Court decides this motion without oral argument under Fed. R. Civ. P. 78. Defendants' motion is granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case have been recounted in several opinions over the last five years, including in a previous summary judgment opinion. ECF No. 102. This case concerns a business partnership gone awry. Plaintiff Codrut Radu Radulescu, a citizen of New Jersey, began operating the dismissed Plaintiff Sync Labs LLC as a single-owner New Jersey limited liability company in 2007. Am. Compl., ECF No. 9 ¶¶ 1–2, 10. Defendant Michael Ferchak is the founder and managing director of Defendant Fusion Manufacturing. Ferchak Email, August 9,

NOT FOR PUBLICATION

2010, ECF No. 93-12 at 2. Plaintiff's amended complaint states that Defendants are Florida residents. ECF No. 9 ¶¶ 3, 6.

Radulescu claims that he and Ferchak met in 2004 on a flight from Asia to the United States. ECF No. 9 ¶ 4. Radulescu at the time was employed on the "advanced system prototyping team" for Agere systems. *Id.* ¶ 8. In July 2007, after losing his job at Agere, Radulescu founded a New Jersey LLC, Phoenix Labs, which later became Sync Labs. *Id.* ¶ 10; State LLC Cert., August 4, 2010. ECF 98-5. Ferchak became involved in Sync Labs by contributing services and capital. Def.'s Statement Material Facts, ECF No. 197-2 ¶ 5; ECF No. 52-1–52-2. In 2008, the parties entered an oral agreement, according to which Ferchak would work for Sync Labs as Vice President of Operations. ECF No. 197-2 ¶ 5. This agreement was memorialized in a written Work Made for Hire Representation/Warranty Agreement (the "Work for Hire Agreement"), which Ferchak signed on January 27, 2010, but which appears to be retroactive to January 2008. Work for Hire Agreement at 2, Hager Dec., Ex. 4, ECF 197-7. According to this agreement, Ferchak agreed to work part-time (about 50 hours a month) over a four-year period. *Id.* He was to be compensated on an hourly basis, receiving 8.33 Class B Units of Profit Interest (BUPIs) for each hour of work. Id. The BUPIs did not give Ferchak voting rights and are not transferable without Radulescu's consent. *Id.* In February of 2008, Ferchak signed a non-disclosure agreement with Plaintiff on behalf of Defendant's company Fusion Manufacturing, LLC. Haidri Dec., Ex. H, ECF No. 201-9.

On July 2, 2009, the parties entered a "Funding Agreement," according to which Ferchak agreed to provide $250,000 in "matching funds" in order to make Sync Labs eligible for an "Edison grant" from the New Jersey Commission on Science and Technology ("NJCST"). Funding Agreement, July 2, 2009, Hager Dec., Ex. 5, ECF No. 197-8. This agreement provided

NOT FOR PUBLICATION

that Ferchak's capital infusion entitled him to "the equivalent share of the Company ownership,"

to be determined at the time of the disbursement "as the parties would agree." *Id.* In August

2009, Ferchak transferred $20,000 to Sync Labs in exchange for 4,000 Class A UPIs ("AUPIs").

Haidri Dec., Ex. E, ECF No. 201-6. This was memorialized in an "Investment Transaction

Receipt" which the parties signed about seven months later. *Id.*

On November 10, 2009, the New Jersey Commission on Science and Technology

awarded Phoenix Labs a $250,000 grant. Haidri Dec., Ex. B, ECF No 201-3. Almost

immediately following this notification, the relationship between Radulescu and Fercheck

soured. In December 2009, the parties began fighting about a fair valuation for Sync Labs and

Ferchak's stake. *See, e.g.*, Valuation Emails, Hagar Dec., Exs. 7–9, ECF Nos. 197-10–197-12.

After weeks of disagreement, on January 27, 2010, Plaintiff made two different offers to

Defendant; his last offer consisted of 4% of Snyc Labs for Defendant's $250,000. *Id.*, Ex. 8, at

D38.

Because the Parties could not reach an agreement, Ferchak drafted a letter to the NJCST

dated January 27, 2010, informing the NJCST that he was withdrawing his $250,000 pledge of

support. Ferchak Letter, Jan. 27, 2010, Hager Dec., Ex. 9, ECF No. 197-12 at D24. Defendant

emailed Plaintiff a copy of this letter with the message: "So here's the million dollar question to

answer what my investment is worth: what's the risk of losing the Edison grant worth to you? Is

it worth not giving me the extra 2.1% that I am asking for?" *Id.* at D23. Defendant does not

outright deny sending this letter, but stresses that Plaintiff does not know and cannot prove that

Defendant actually sent the letter. ECF No. 197-2 ¶ 55 n.4. It is undisputed that Ferchak

eventually emailed a member of the NJCST to convey that he would not be providing the

necessary matching funds. Hager Dec., Ex. 12, ECF No. 197-15 at D20.

NOT FOR PUBLICATION

On January 30, 2010, Defendant terminated negotiations with Plaintiff by emailing him "I'm not offering my money anymore." Hager Dec., Ex. 11, ECF No. 197-14 at D43. The Parties vociferously dispute whether these December 2009–January 2010 negotiations should be considered negotiations or renegotiations. Pl's Statement Material Facts, ECF No. 201-1 ¶¶ 56–57; Def.'s Statement Material Facts, ECF No. 197-2 ¶¶ 56–57.

On May 30, 2010, Ferchak tendered his resignation from Sync Labs, effective April 1, 2010. ECF No. 197-2 ¶ 58. Plaintiff claims that he assumed some of Ferchak's job responsibilities, Pl.'s Statement of Material Facts ¶ 21, and hired a recent MBA graduate to assume the remaining duties, Haidri Dec., Ex. J, ECF No. 201-11. Throughout the summer of 2010, Ferchak demanded that Radulescu refund the $20,000 he had provided to Sync Labs in 2009, but Radulescu refused to return the money. See, e.g., Hager Decl., ECF No. 93-1 ¶¶ 25–26, 28–29. Following Ferchak's resignation, Ferchak prevented Radulescu from accessing the Sync Labs web domain and email system. Pl.'s Statement of Material Facts, ECF No. 201-1 ¶ 17. Plaintiff also claims that in this timeframe Ferchak stole Sync Labs' intellectual property. ECF No. 9 ¶ 106.

On July 16, 2010, the New Jersey Commission on Science and Technology closed its doors due to budget restrictions. Hager Dec., Ex. 13, ECF No. 197-15. The New Jersey Economic Development Authority assumed responsibility for administering and monitoring outstanding NJCST grants in late 2010. Haidri Dec., Ex. G, ECF No 201-8. On March 2, 2011 Ferchek sent an email to James Patterson of the NJCST to inform him that he and Radulescu had "failed to reach a satisfactory agreement on the equity share for [his] investment and therefore [he] . . . rescinded [his] offer of investment." Hager Dec., ECF No. 197-15, Ex. 12. He informed

NOT FOR PUBLICATION

Patterson that he was unaware if the company had found a replacement investor to provide the matching funds for the NJCST grant. *Id.*

## I.   The amended complaint, counterclaims, and initial dispositive motions

Plaintiff originally filed this lawsuit in New Jersey State Court on May 31, 2011. Notice of Removal, ECF No. 1. Defendants removed the lawsuit to this Court and Plaintiff filed an Amended Complaint. Am. Compl., ECF No. 9. In the Amended Complaint, Radulescu and Sync Labs brought the following ten causes of action against Ferchak and Fusion Manufacturing: breach of contract, *id* ¶¶ 96–97; violation of New Jersey's LLC Act, *id.* ¶¶ 98–100; fraud, *id.* ¶¶ 101–04; theft, *id.* ¶¶ 105–06; breach of implied duties and covenants, ¶¶ 107–09; tortious interference with a prospective economic advantage, *id.* ¶¶ 110–12; breach of warranties, *id.* ¶¶ 113–15; promissory estoppel, *id.* ¶¶ 116–21; conversion, *id.* ¶¶ 122–27; and defamation, *id.* ¶¶ 128–33. Defendants filed counterclaims for breach of contract, Amended Counterclaim, ECF No. 20 ¶¶ 16–18; violation of the New Jersey Wage and Hour Law, in particular the Wage Payment Law (NJWPL), *id.* ¶¶ 19–20; and violation of the New Jersey Uniform Securities Law (NJUSL), *id.* ¶¶ 21–25.

Plaintiff Radulescu, a licensed attorney, initially represented both himself and Former-Plaintiff Sync Labs. On June 7, 2012, Magistrate Judge Madeline C. Arleo disqualified Radulescu as counsel for Sync Labs and ordered Sync Labs to obtain independent counsel by July 6, 2012. ECF No. 37. Plaintiff Radulescu filed a motion for reconsideration, which Magistrate Judge Arleo denied. ECF No. 49. Radulescu then appealed the order to this Court. The Court denied the appeal, ECF No. 60, as well as Radulescu's later motion for reconsideration of the Court's denial. ECF No. 82.

NOT FOR PUBLICATION

On April 12, 2013, Radulescu filed a motion for judgment on the pleadings, ECF No. 84, which the Court converted to a motion for summary judgment at Defendants' request, ECF No. 96. On September 4, 2013, the Court granted summary judgment in favor of Plaintiff Radulescu with respect to his breach of contract claim and Defendants' breach of contract and NJWPL counterclaims. ECF No. 102. The Court also denied Radulescu's motion for summary judgment with respect to Defendants' NJUSL counterclaim. *Id.*

Plaintiff Radulescu moved for reconsideration of the summary judgment decision on September 18, 2013, ECF No. 104, and Defendants filed a cross-motion to dismiss the claims of Plaintiff Sync Labs for failure to prosecute and failure to comply with Magistrate Judge Arleo's order to obtain counsel, ECF No. 107. The Court denied both motions in one opinion on January 6, 2014, holding in part that Defendants' motion was not "related to the subject matter" of Radulescu's motion, as required by L. Civ. R. 7.1(h). ECF No. 115 at 8.

Defendants then filed a renewed motion for dismissal of Plaintiff Sync Labs under Fed. R. Civ. P. 41. ECF No. 120. Plaintiff Radulescu filed a cross-motion for default judgment, claiming that Defendants had failed to attend a pre-trial conference, refused to cooperate with discovery, and fabricated evidence. ECF No. 122. On June 1, 2014, the Court dismissed Plaintiff Sync Labs from the action with prejudice and denied Plaintiff Radulescu's cross-motion for default judgment. ECF No. 129.

## II.   Discovery disputes

What followed were nearly 18 months of discovery disputes overseen by Magistrate Judge Waldor, to whom the case was reassigned at the end of 2012. On December 10, 2014, Magistrate Judge Waldor issued an amended scheduling order that required Plaintiff Radulescu to file any motion to amend or correct his first amended complaint by April 30, 2015 and set

NOT FOR PUBLICATION

May 1, 2015 as the final date of factual discovery. ECF No. 132. The parties continued to request relief on various discovery issues. On August 5, 2015, Magistrate Judge Waldor held a conference between the parties to discuss several disputes, including (1) whether Radulescu could subpoena internet service providers ("ISPs") for allegedly unproduced communications involving Ferchak he claimed were stored on their servers, *see* Def. Mot. Relief, ECF No. 141, and (2) whether Radulescu could block the New Jersey Department of the Treasury's ("Treasury Department") release of materials related to Sync Labs' Edison grant application sought by Defendants under New Jersey's Open Public Records Act ("OPRA"). *See* Radulescu Mot. Seal, ECF No. 145. Magistrate Judge Waldor (1) quashed Radulescu's subpoena to the ISPs, (2) ordered Defendants to file a certification stating whether the ISPs had any relevant, discoverable communications stored on their servers, (3) ordered Radulescu to provide evidence demonstrating that the Edison grant materials were non-public under OPRA, and (4) granted Radulescu permission to file a motion for leave to amend his complaint. ECF No. 154; ECF No. 158 (clarifying ECF No. 154). Magistrate Judge Waldor instructed Plaintiff Radulescu to file the motion to amend "after September 15," Hearing Transcript, Aug. 5, 2015, ECF No. 175-29 at 69:11-16, and specifically directed Radulescu to address whether good cause existed under Fed. R. Civ. P. 16(b)(4) to permit filing after the initial April 30, 2015 deadline. ECF No. 154.

On September 28, 2015, Magistrate Judge Waldor denied Radelescu's motion to seal the Edison grant documents, ECF No. 160, but the parties continued to dispute whether the documents were properly discoverable. *See* Radulescu Letter, ECF No. 168 (Arguing, on November 30, 2015, that the Treasury Department had mistakenly released the documents, that Magistrate Judge Waldor's September 28 order was incorrectly decided, and that Defendants had ignored requests from the Treasury Department to destroy their copies of the documents).

NOT FOR PUBLICATION

### III.    The motions for leave to file a second amended complaint

On December 11, 2015, Plaintiff Radulescu filed a motion for leave to file a second amended complaint. ECF No. 169. Radulescu withdrew the motion on December 29 after receiving a notice of intent to file Rule 11 sanctions from Defendants' counsel. *See* Motion to Withdraw Remark, ECF No. 171; Christopher W. Hager, Esq. letter regarding Rule 11 sanctions, ECF No. 171-1. On January 23, 2016, Plaintiff Radulescu filed a second motion for leave to file a second amended complaint. ECF No. 175. The proposed second amended complaint brought twenty-two causes of action against the existing Defendants and several new Defendants and three causes of action against the Treasury Department. In the first ten counts, Plaintiff Radulescu reasserted, on behalf of himself only, the same ten causes of action brought in the first amended complaint. Proposed Second Amended Complaint, ECF No. 175-5 ¶¶ 1–250. In the eleventh through nineteenth counts, Plaintiff Radulescu reasserted, on behalf of the dismissed Plaintiff Sync Labs as its "assignee of choses [sic] in action and property," all of the causes of action brought in the first amended complaint other than the defamation claim. *Id*. ¶¶ 251–294. Plaintiff Radulescu attempted to add Cynthia Ferchak, the mother of Michael Ferchak and a "principal" in the allegedly pledged Sync Labs investment, as a Defendant in the first nineteen counts. *Id*. ¶¶ 99–100. In Count Twenty, Plaintiff Radulescu asserted an action against Defendant Michael Ferchak and new Defendant Paul Dunning for fraudulent transfer, in violation of N.J.S.A. 25:2-25, alleging that Ferchak and Dunning secretly transferred the assets of Defendant Fusion Manufacturing to another company under their control, new Defendant Fusion Glassworks LLC, after the Court granted summary judgment on Radulescu's breach of contract claim. *Id*. ¶¶ 295–299. In Count Twenty-One, Plaintiff Radulescu charged Defendants with tortious concealment and spoliation of evidence, claiming that Ferchak intentionally erased or

NOT FOR PUBLICATION

discarded the electronic communications Radulescu sought from the ISPs. *Id*. ¶¶ 300–308. In Count Twenty-Two, Radulescu charged Defendants with accessing, tampering with, and altering or copying data on his computer networks, in violation of N.J.S.A. § 2A:38A-3. *Id*. ¶¶ 309–314. Finally, in Counts Twenty-Three, Twenty-Four, and Twenty-Five, Radulescu attempted to bring claims against the Treasury Department under various New Jersey Statutes. *Id*. ¶¶ 315–338.

After hearing oral argument on February 2, 2016, Magistrate Judge Waldor denied Plaintiff Radulescu's motion for leave to file the second amended complaint. ECF No. 177. At oral argument, Magistrate Judge Waldor indicated that Radulescu had failed to demonstrate good cause to justify the late filing of Counts One through Nineteen, Twenty-One, and Twenty-Two, Hearing Transcript, Feb. 2, 2016, ECF No. 178 at 39:23–40:1, 41:24–42:1, that Count Twenty was untimely and inadequately pled, *id*. at 41:8–11, and that an amendment to assert the three claims against the Treasury Department would be futile because the claims were untimely and did not relate to the initial action. *Id*. at 42:2–9.

After seeking sanctions at oral argument, *see id*. at 17:21–24, Defendants filed a motion for monetary sanctions against Plaintiff Radulescu under Fed. R. Civ. P. 11 on February 10, 2016. ECF No. 179. Defendants argued that Radulescu's second motion for leave to file a second amended complaint was "frivolous and harassing." *Id*. at 2. In response, Radulescu sought leave to file his own motion for sanctions. ECF No. 184. The Court denied Defendants' motion for sanctions and dismissed Plaintiff's request for leave to file a Rule 11 motion as moot on May 18, 2016. ECF No. 192. Finally, on March 1, 2016, Plaintiff Radulescu filed an appeal of Magistrate Judge Waldor's denial of his second motion for leave to file a second amended complaint. ECF

NOT FOR PUBLICATION

No. 187. The Court affirmed Magistrate Judge Waldor's decision to deny leave to file a second amended complaint on May 18, 2016. ECF No. 192.

### IV.    Motion for summary judgment

Defendants filed the current motion for summary judgment on August 15, 2016. ECF No. 197.  Defendants argue that the "amended complaint consists of claims that are virtually exclusive to Sync Labs," which was dismissed as a party to this lawsuit for failure to prosecute under Fed. R. Civ. P. 41(b). ECF No. 197-1. Defendants review each count of the amended complaint, asserting that Plaintiff cannot successfully prove any of his individual claims. *Id.* at 11–16. Defendants also argue that each of Plaintiff's individual claims is precluded as a result of Sync Labs' 41(b) dismissal. *Id.* Finally, Defendants ask the Court to reconsider its September 4, 2013 decision granting Plaintiff summary judgment on his breach of contract claim. *Id.* at 17. Defendants argue that they have "newly discovered" evidence from the Plaintiff's deposition that entitles them to the requested relief. *Id.* at 17–23.

Plaintiff responds that Defendants misunderstand preclusion and argues that "dismissal of Sync Labs can not [sic] preclude any of coplaintiff Radulescu's claims." ECF No. 201 at 6–9. Plaintiff only devotes one paragraph of his brief to affirmatively asserting the bases for his individual legal claims.  *Id.* at 9–10. He primarily argues that as a creditor of Sync Labs, he has "a direct cause of action to pursue defendant Ferchak for breaching his obligations to Sync Labs." *Id.* at 10. Radulescu cites neither the factual record nor case law to support this claim. *Id.* Radulescu also claims, for the first time in this litigation, that he is the assignee of all of Sync Labs' legal claims against Defendants. *Id.* at 3. Again, without reference to any legal authority,

10

NOT FOR PUBLICATION

Radulescu argues that Sync Labs' property and choses in action were transferred to him as consideration for loans that he provided Sync Labs to cover Ferchak's default. *Id.*

In their reply brief, Defendants strongly object to Plaintiff's arguments and ask the Court to disregard the alleged assignment document offered by Plaintiff. ECF No. 203 at 1–3. Defendants claim that the document was never produced in discovery and argue that Plaintiff cannot use it to establish his individual claims. *Id.* Defendants further object that in the five-year pendency of this case, Plaintiff has never before asserted that he is the assignee of Sync Labs' claims. *Id.* Finally, Defendants ask the court to disregard Plaintiff's evidence that he offered Mr. Ferchek's position to Mark Pawlyk on April 16, 2010, Exhibit J, ECF No. 201-11, because the offer letter submitted to the court as an exhibit was not produced in discovery, Plaintiff did not provide Mr. Pawlyk's name in its interrogatory responses and disclosures, and because Plaintiff did not mention him in his deposition when he was asked whether Sync Labs had replaced Mr. Ferchak. ECF No. 203 at 3.

## STANDARD OF REVIEW

### I.  Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant

NOT FOR PUBLICATION

substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational

trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of

material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried

this burden, the non-movant "must do more than simply show that there is some metaphysical

doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus.

Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). Each party must support its position

by "citing to particular parts of materials in the record . . . or showing that the materials cited do

not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Facts must be viewed

in the light most favorable to the nonmoving party only if there is a genuine dispute as to those

facts. *Scott*, 550 U.S. at 380. At this stage, "the judge's function is not . . . to weigh the evidence

and determine the truth of the matter." *Anderson*, 477 U.S. at 249. "[W]here the nonmoving

party bears the burden of proof, it must by affidavits, or by the depositions and admissions on

file make a showing sufficient to establish the existence of every element essential to that party's

case." *Childers v. Joseph*, 842 F.2d 689, 694 (3d Cir. 1988) (quoting *Equimark Commercial Fin.

Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 142 (3d Cir. 1987) (quoting *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986))) (internal quotation marks omitted).

**II.    Motion for relief from judgment**

If a party does not move for reconsideration within 14 days of judgment, as required by

Local Rule 7.1 (Federal Rule 59(e) allows 28 days), it may still move for relief from a final

judgment, order, or proceeding pursuant Fed. R. Civ. P. 60(b). However, "[d]ue to the

overriding interest in the finality and repose of judgments, a Rule 60(b) motion is considered

12

NOT FOR PUBLICATION

extraordinary relief which should be granted only where extraordinary justifying circumstances are present." *Katz v. Twp. of Westfall*, 287 Fed. Appx. 985, 988 (3d Cir. 2008) (citations omitted).

A party moving for relief from judgment under Rule 60(b)(2) must demonstrate that it has discovered new evidence that, "with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). The Third Circuit has held that a movant under Rule 60(b) "bears a heavy burden:" the movant must show that the new evidence is evidence "of which the aggrieved party was excusably ignorant at the time of trial," and must demonstrate more than "the potential significance of the new evidence." *Plisco v. Union R. Co.*, 379 F.2d 15, 16–17 (3d Cir. 1967) (internal quotations and citations mitted), cert. denied, 389 U.S. 1014 (1967)). Specifically, a party moving for relief under Rule 60(b)(2) must show that the newly discovered evidence is "(1) material and not merely cumulative, (2) could not have been discovered prior to trial through the exercise of reasonable diligence, and (3) would probably have changed the outcome." *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991). A motion under Rule 60(b)(2) must be made within a year after the entry of judgment. Fed. R. Civ. P. 60(c)(1).

## DISCUSSION

Defendants' argue that Sync Labs' claims were "essentially the entire basis of this case."[1] ECF No. 197-1 at 11. It follows, they argue, that summary judgment is appropriate because Plaintiff cannot prove the individual claims he asserts in his amended complaint. *Id.* Plaintiff's opposition brief throws many theories at the wall, but Radulescu primarily relies on two

---

[1] Defendants also appear to ask the Court to enter summary judgment on Sync Labs' claims. ECF No. 197-1 at 10. Snyc Labs' claims were previously dismissed under Fed. R. Civ. P. 41(b). ECF Nos. 129–130. Sync Labs is not currently a party to this lawsuit and has no live claims.

NOT FOR PUBLICATION

arguments in response. First, he contends that he has individual claims as the assignee of all of Sync Labs' legal claims against Defendants. ECF No. 201 at 3. Second, he advances that as a creditor of Sync Labs, he "has a direct and independent right to sue defendants Ferchak and Fusion-Manufacturing." ECF No. 201 at 2. The Court addresses these arguments in turn.

## I.   Plaintiff's individual claims fail to the extent they rely on an assignment of Sync Labs' claims

Plaintiff argues that he is the assignee of Sync Labs' claims against Defendants. ECF No. 201 at 2. In support of this argument, he attaches a document dated August 15, 2013 titled, "Resolution Approving Assignment of Contract and Commercial Paper for Extension of the Loan Repay Deadline." Hairdi Dec., Ex. D, ECF No. 201-5. According to Radulescu, the assignment document was executed by Sync Labs in exchange for an extension on the repayment of loans he extended to the company. *Id.*; *see also* ECF No. 201 at 3.

Defendants argue that this document should be disregarded for several reasons. First, Defendants claim the document was not produced in discovery, and "was never included or referenced in a single one of Plaintiff's multiple filings in this case." Def.'s Reply Br., ECF No. 203 at 2. Second, Defendants note that Plaintiff did not claim to be the assignee of Sync Labs' claims until almost five years into the case. *Id.* Finally, Defendants question the document's validity, noting that it is only signed by Plaintiff and not consented to by Defendant Ferchak, who is a partial owner of Sync Labs, LLC. *Id.*

### A.   Whether the Court should consider the assignment document

Defendants assert that the Court should disregard Plaintiff's Exhibit D, ECF No. 201-5, which Plaintiff argues is a valid assignment of Sync Labs' claims against Defendants. ECF No. 203 at 2. Defendants contend that Exhibit D was neither produced in discovery nor previously

14

NOT FOR PUBLICATION

included in any of Plaintiff's multiple filings in this case, *id.*, but Defendants offer no proof for either of these arguments. Plaintiff's Exhibit D is clearly Bates Numbered "Ra 003871." ECF No. 201-5.[2] Defendants do not maintain that this Bates Number was fraudulently applied or offer an affidavit stating that it was not included in Plaintiff's discovery production. Because Defendants have offered no evidence that the document was not produced in discovery, the Court has no basis to conclude that the document was not produced by Mr. Radulescu. Additionally, though the Court may conclude that Radulescu has waived any new claims raised by the assignment document, the Court may consider the document even if it has never before been produced in this litigation. The Court will not simply disregard the alleged assignment document given Defendants' failure to prove a valid basis for its exclusion.

### B.     The validity of Plaintiff's assignment of Sync Labs' claims

Defendants' also claim that Exhibit D is an invalid assignment of Sync Labs' legal claims to Plaintiff Radulescu. ECF No. 203 at 2. They cite no law of contracts or limited liability companies to support this contention. Instead, Defendants' state that the document is only signed by Plaintiff and that the assignment was made without the approval of Defendant Ferchack, who Defendants claim is a partial owner of Sync Labs. *Id.* It is not clear on the face of the document that this assignment is invalid. It purports to be a Sync Labs resolution signed by the majority owner. *Id.* "In the absence of a written operating agreement providing to the contrary . . .a[n] . . . owner of the LLC had broad authority to bind the LLC." *Kuhn v. Tumminelli*, 366 N.J. Super. 431, 439 (App. Div. 2004); N.J.S.T. § 42:2C-37 (2012), formerly cited as N.J.S.T. 42:2B-27. Substantively, New Jersey law allows the assignment of "all choses in action arising on

---

[2] By contrast, Exhibit J to Plaintiff's Opposition Brief, ECF 201-11, which Defendants also argue should be excluded as a result of Plaintiff's failure to produce it during discovery, is not Bates Numbered. ECF No. 203 at 3.

NOT FOR PUBLICATION

contract." N.J.S.A. 2A:25-1 (2002); *see also Kimball Intern., Inc. v. Northfield Metal Products*, 334 N.J. Super. 596, 612 (A.D. 2000), certification denied 167 N.J. 88 (2000).

Even if Plaintiff could contract on behalf of the company and validly assign Sync Labs' causes of action, it is less clear that he could validly convey Sync Labs' claims against Defendants to himself. For example, it is possible that such an act might violate the duty of loyalty owed by Plaintiff to other Sync Labs members. N.J.S.A. § 42:2C-39(a). The scope of the duty of loyalty is not abundantly clear under New Jersey law and it can be modified by the operating agreement in a member-managed LLC. *See*, N.J.S.A. § 42:2C-39(3)(e) ("A member does not violate a duty or obligation under this act or under the operating agreement merely because the member's conduct furthers the member's own interest."). Neither party has briefed this issue nor included the applicable Sync Labs operating agreement, proof of company ownership, nor evidence of Sync Labs' regular business practices. It is therefore impossible to determine whether the assignment document is legally enforceable at this time.

### C.    Any interest Plaintiff has in Sync Labs' claims cannot form the basis of the individual claims he alleges in the first amended complaint

Though the Court does not decide the legal effect of the assignment document, assuming that it is legally enforceable, it does not, as Plaintiff argues, ECF No. 201 at 3, establish the individual claims alleged in Plaintiff's complaint because: (1) Plaintiff's assigned claims are distinct from any individual claims he might have as a result of Defendants' alleged harmful conduct; (2) Plaintiff waived the assigned claims by failing to raise them before his opposition brief to Defendant's motion for summary judgment, and (3) Plaintiff cannot reassert claims that were already dismissed with prejudice by the Court.

NOT FOR PUBLICATION

1. The allegedly assigned claims are distinct from the individual claims
Plaintiff asserted in his Amended Complaint

It is a long-held tenant of contract law that where an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his or her rights. Restatement (Second) of Contracts § 317 (1981); N.J.S.A. § 2A:25-1 (2002); see, e.g., *Parsons v. Woodward*, 22 N.J.L. 196, 205 (Sup. Ct. 1849) (recognizing that any beneficial contract may be assigned, and courts of law will protect the rights of the assignee suing in the name of the assignor); *Kimball Int'l, Inc. v. Northfield Metal Prod.*, 334 N.J. Super. 596, 611 (App. Div. 2000) (identifying assignee's claim as equivalent to that previously held by assignor). It follows that when Plaintiff raises his rights under the purported assignment, he is raising his rights as an assignor. Because the assigned rights are Sync Labs' rights against Defendants, they are distinct from any individual rights he may also possess as to Defendants. *See In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 539–40 (D.N.J. Sept. 29, 2004) (Plaintiffs alleged claims as individual pharmacies and as assignees of pharmaceutical wholesalers' claims). Although the validity of Plaintiff's assignment is unclear, even a valid assignment would not prove what Defendants challenge at summary judgment: whether Plaintiff can successfully prove that he was harmed in his individual capacity by Defendants' actions.

2. Plaintiff waived any claims assigned to him by Sync Labs

Plaintiff has litigated this case for approximately five years without ever asserting that he possesses an assignment of Sync Labs' claims against Defendants. He did not assert the assignment in the operative complaint, in his interrogatory responses to Defendants, in his opposition to Defendants' motion to dismiss Sync Labs' claims with prejudice, or at his deposition. This is astounding and inexcusable, especially in light of the fact that Sync Labs

17

NOT FOR PUBLICATION

participated in this litigation on its own behalf until its claims were dismissed with prejudice in 2014. ECF No. 129–130. Remarkably, Plaintiff now claims to have possessed an assignment of Snyc Labs' claims for over three years, choosing not to assert the claims until he filed his opposition brief to Defendants' motion for summary judgment, ECF No. 201 at 3; 201-5, "Exhibit D." "An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims." *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1183, 23 at n.9 (3d ed. 2004); *Rojo v. Deutsche Bank*, 487 Fed. Appx. 586, 589 (2d Cir. N.Y. 2012) ("Rojo's argument that DB violated its duty of good faith and fair dealing was waived. Rojo mentioned that claim for the first time in his memorandum of law in opposition to summary judgment."). Because Plaintiff did not allege any claims against Defendants as Sync Labs' assignee until the present summary judgment motion, taking place five years into the litigation, he cannot now assert them.

       3.   <u>Plaintiff cannot assert claims that have already been dismissed with prejudice</u>

      Moreover, any claims Plaintiff asserts against Defendants under an assignment by Sync Labs were already dismissed with prejudice by the Court, ECF. No. 129, 130, and cannot be refiled in an attempt to get around the Court's order. Plaintiff's assignment is subject to any defense or claim that Defendants would have against the assignor, Sync Labs, before notice of the assignment was given. *Falkenstern v. Herman Kussy Co.*, 25 N.J. Misc. 447, 448 (Sup. Ct. 1947); *James Talcott, Inc. v. H. Corenzwit & Co.*, 76 N.J. 305, 310 (N.J. 1978); Restatement (Second) of Contracts § 336 (1981). "[T]he assignee's right is subject to defenses and claims arising from dealings between assignor and obliger . . . before notification." Restatement (Second) of Contracts § 336, Comment b (1981). Plaintiff, as both the purported assignee and majority owner of Sync Labs had many opportunities to provide notice of the assignment to

NOT FOR PUBLICATION

Defendants, but failed to do so.[3] On June 11, 2014, the Court dismissed Sync Labs with prejudice from this lawsuit. ECF. No 129, 130. Plaintiff's assigned Sync Labs claims are subject to that dismissal. Plaintiff cannot now invoke the previously undisclosed assignment in an attempt to avoid the Court's dismissal of Sync Labs' claims. Fed. R. Civ. P. 41(b); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 506 (2001) (stating that dismissal of a case with prejudice under Rule 41(b) barred refiling of the same claim in the same court). Plaintiff cannot rely on the purported assignment to survive summary judgment on his individual claims.

## II.    Plaintiff's individual claims against Defendants Ferchek and Fusion Manufacturing

### A.    Count One

Defendants seeks summary judgment on Plaintiff's claim that Defendants breached various contracts with Radulescu. ECF No. 197-1 at 11–12. Defendant's motion for summary judgment as to this claim is granted.

A claimant may prove a breach of contract if he proves the existence of a contract, breach, damages and that the claimant performed his own contractual obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). On September 4, 2013, the Court granted Plaintiff summary judgment on his breach of contract claim based on the Work for Hire agreement between him and Ferchek because he proved these elements. ECF No. 103. Defendants now contend that Radulescu is not involved in any other agreements at issue in this case because all remaining agreements relate only to Sync Labs. ECF No. 197-1 at 11–12. Defendants state that the Funding Agreement between Ferchek and Sync Labs is the only remaining contract at issue in this case. *Id.* Defendants support this contention with Plaintiff's deposition testimony, which identifies only the Funding Agreement and the Work for Hire

---

[3] Plaintiff only asserted the alleged assignment in 2015 in a proposed amended pleading, ECF No. 175-5, that this Court did not grant leave to file. ECF. No. 177.

NOT FOR PUBLICATION

Agreement as the contracts underlying the first count of his Amended Complaint. Def.'s

Statement of Material Facts, ECF No. 197-2 ¶ 62. Plaintiff represents that that there many other

applicable contracts, ECF No. 201-1 ¶ 62, but names only the January 2, 2009 Funding

Agreement between Sync Labs and Ferchak and a February 27, 2008 non-disclosure agreement

between him and Ferchek. *Id.* ¶ 8; Haidri Dec., Ex. H; ECF No. 201-9. Plaintiff's brief does not

address the non-disclosure agreement and Radulescu offers no evidence to support an argument

that Ferchek violated the non-disclosure agreement.

The Funding Agreement is between Defendant Michael Ferchak and Phoenix Labs LLC

(the predecessor to Sync Labs), but Plaintiff argues that he "as a creditor of Sync Labs . . . has a

direct cause of action to pursue defendant Ferchak for breaching his obligations to Sync Labs,

even including any direct contracts between defendant Ferchak and plaintiff Sync Labs since

plaintiff Radulescu was its intended third party beneficiary." Pl.'s Opp. Brief, ECF No 201 at 10.

Despite Plaintiff's frequent invocations of this argument, he provides no law to support it.

Under New Jersey law, it is well-settled "that a third party is deemed to be a beneficiary

of a contract only if the contracting parties so intended when they entered into their agreement."

*Ross v. Lowitz*, 222 N.J. 494, 514 (2015) (citing *Broadway Maint. Corp. v. Rutgers, State Univ.*,

90 N.J. 253, 259 (1982); *Borough of Brooklawn v. Brooklawn Hous. Corp.*, 124 N.J.L. 73, 76–77

(1940). The Funding Agreement makes no mention of Radulescu and nothing on the record

suggests that the Parties intended him to personally benefit from the Funding Agreement.

Defendants' motion for summary judgment is granted as to Plaintiff's breach of contract claim.

**B.    Count Two**

Count Two of Plaintiff's Amended Complaint alleges that Defendants breached N.J. Stat.

Ann. § 42:2B-33, ECF No. 9 ¶¶ 98–100, which states "a member is obliged to a limited liability

NOT FOR PUBLICATION

company to perform any promise to contribute cash or property or to perform services even if he is unable to perform because of debt, disability, or any other reason." N.J. Stat. Ann. § 42:2B-33 (repealed by L.2012, c. 50, § 95, eff. March 1, 2014).

Defendants make alternative arguments that summary judgment should be granted on Count Two. First, Defendants argue that summary judgment is appropriate because § 42:2B-33 was repealed effective March 1, 2014. Second, Defendants argue that Plaintiff cannot establish an individual claim to relief under the statute. Def.'s Br. ECF No. 197-1, at 12. Plaintiff responds that his claim survives because N.J. Stat. Ann. § 42:2C-33 replaced § 42:2B-33. Pl.'s Statement of Material Facts, ECF No. 201-1 ¶ 64. The Court treats Count Two as brought under § 42:2C-33 because it is practically identical to the previous version, which Plaintiff pled in his Amended Complaint.

Though Plaintiff does not specifically address this Count in his brief, he claims generally that he has individual rights to assert certain claims against Defendants due to his status as a creditor of Sync Labs, LLC. Opp. Br., ECF No. 201, at 10. Under § 42:2C-33, "a creditor of a limited liability company, which extends credit or otherwise acts in reliance on a [member's] obligation" to contribute to the LLC may enforce the obligation. N.J. Stat. Ann. § 42:2C-33(b). In opposition to Defendants' motion for summary judgment, Plaintiff includes three line of credit promissory notes, which appear to establish his status as a creditor of Sync Labs. Haidri Dec., Ex. C, ECF No. 201-4. At least one of these promissory notes mentions Defendant Ferchak's promise to pay $250,000 to Sync Labs and references a promissory note signed by Michael Ferchak on January 2, 2009. *Id.* at Ra003857. A copy of the note is not included. Defendant has not offered any evidence challenging these documents. While it is possible that Defendant will be able to show either that Plaintiff did not extend credit in reliance on Ferchak's promise to pay

21

NOT FOR PUBLICATION

Sync Labs $250,000 or that § 42:2C-33 was not violated in this instance, on the face of the statute, viewing the facts in the light most-favorable to the non-moving party, Plaintiff has presented a genuine dispute of material facts such that Defendants' motion for summary judgment on Count Two is denied. *See Scott v. Harris*, 550 U.S. at 380.

C.    **Count Three**

Defendants seek summary judgment on Plaintiff's claim that Defendants committed fraud by making "promises that they never intended to keep, with knowledge of the promises' falsity, which they intended for the plaintiff to rely on." ECF No. 9 ¶ 103. Because Plaintiff has done nothing to demonstrate that a genuine issue exists, choosing to rely on the conclusory allegations in the pleadings, Defendant's motion for summary judgment is granted as to Plaintiff's fraud claim.

The five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 609, 691 A.2d 350, 367 (1997). Plaintiff argues that Defendants' promise to match funds for Sync Labs' Edison Grant application was fraudulent because Defendants never actually intended to pay the matching amount. ECF No. 9 ¶¶ 101–104. Plaintiff offers no evidence in either his brief or Statement of Material Facts sufficient to establish his case. Rule 56(c) mandates the entry of summary judgment. *See Celotex*, 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

NOT FOR PUBLICATION

### D.   Counts Four and Nine

The Court considers Plaintiff's claims for theft and conversion together because conversion is the proper tort claim for an accusation of theft. Because Plaintiff has failed to provide evidence of his conversion claim, Defendants' motion for summary judgment is granted.

The elements of common law conversion under New Jersey law are "the existence of property and the right to immediate possession thereof belonging to plaintiff, and the wrongful interference with that right by defendant. *Marsellis-Warner Corp. v. Rabens*, 51 F. Supp. 2d 508, 525 (D.N.J. 1999) (quoting *Andrews v. Holloway*, No. 95-cv-1047, 1995 WL 875883, at *14 (D.N.J. Nov. 9, 1995) (*citing First Nat'l Bank of Bloomingdale v. North Jersey Trust Co.*, 18 N.J.Misc. 449, 14 A.2d 765 (1940)) (internal quotation marks omitted). Plaintiff alleges in his complaint that Ferchek "fraudulently accessed the Plaintiff [sic] web site and changed the access password which deprived the Plaintiff of his access to his property and ISP services," ECF No. 9 ¶ 124. Radulescu makes no specific mention of this claim in his opposition brief, but he does refer to the alleged conversion in his Statement of Material Facts. Pl.'s Statement of Material Facts, ECF No. 201-1 ¶ 17. Plaintiff advances a brief email correspondence between him and Ferchak where Ferchak offers to return Plaintiff's access to the domain in exchange for a buy back of his "profits interests" in Sync Labs. Pl.'s Statement of Material Facts, ECF No. 201-1 ¶ 17. Defendant Ferchak was a Sync Labs shareholder at the time of this email exchange and the exchange does not establish that the web and email domain belonged to Plaintiff personally. Because Plaintiff has not cited any legal authority or provided evidence sufficient to establish substantial elements of his claim, summary judgment will be entered in favor of Defendant on Plaintiff's theft and conversion claims.

NOT FOR PUBLICATION

### E.    Count Five

Defendants seek summary judgment on Plaintiff's claim that Defendants breached implied "duties and covenants of loyalty, care, and fair dealing with all other member of the LLC." Because Plaintiff has done nothing to establish a factual or legal basis for these claims, the Court grants summary judgment to Defendants.

The Parties agree that this claim is based on actions Ferchak allegedly took against Sync Labs LLC. Def.'s Statement of Material Facts, ECF No. 197-2 ¶¶74–75; Pl.'s Statement of Material Facts, ECF No. 201-1 ¶¶74–75. Yet again, Plaintiff's brief offers only conclusory statements that he has a cause of action because Defendants have violated unspecified duties and covenants. ECF No. 201 at 9–10. Nor does Plaintiff identify any legal authority that establishes his cause of action. Instead, he leaves it up to the Court to speculate as to which duties and covenants he believes have been violated.

Assuming that Plaintiff intends to bring a cause of action under New Jersey's Revised Uniform Limited Liability Company Act § 42:2C-39, which governs the standards of conduct for members and managers of a limited liability company, Plaintiff's claim fails. Plaintiff has provided no evidence about whether Sync Labs is a member-managed or a manager-managed LLC, making it impossible to identify the appropriate standard of care or specific duties Defendants owed Sync Labs.[4] Assuming Defendants owed Plaintiff all of the duties specified in § 42:2C-39, his claim still fails. Plaintiff has offered no evidence to show that Defendants violated one of the duties of loyalty specified in § 42:2C-39(b) or that Defendants have engaged in "grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law"

---

[4] For example, in a manager-managed LLC, the members do not have a duty of loyalty. N.J. Stat. Ann. § 42:2C-39(i)

NOT FOR PUBLICATION

such that they violated a duty of care owed to Radulescu. N.J. Stat. Ann. § 42:2C-39(c) (West). The Court therefore grants summary judgment in favor of Defendants as to this claim.

### F.   Count Six

Plaintiff alleges that Defendants committed tortious interference with a prospective economic advantage by failing to provide matching funds for Sync Labs' Edison Grant. ECF No. 9 ¶¶ 110–12. The Court grants summary judgment to Defendants on this count because the Plaintiff has failed to show a genuine issue of material fact and Defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Tortious interference with a prospective economic advantage developed under common law to protect parties to an existing or prospective contractual relationship from outside interference. *Printing Mart–Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751–53 (1989). It is fundamental "to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship." *Id.* (collecting cases). Because the cause of action for tortious interference was not meant to disrupt the rules governing contractual relationships, "[w]here a person interferes with the performance of his or her own contract, the liability is governed by principles of contract law." *Id.*

Plaintiff's brief does not mention this count and does not establish a factual basis for this claim. Additionally, the Parties dispute primarily stems from the Funding Agreement, which cannot serve as a basis for a tortious interference claim. Summary judgment will be entered for Defendants as to this claim. Because Plantiff has shown no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law, summary judgment is granted to Defendants on this claim. Fed. R. Civ. P. 56(a).

NOT FOR PUBLICATION

### G.    Count Seven

Count Seven of Plaintiff's Amended Complaint contends that Defendant Fusion-Manufacturing delivered defective and unusable products to Sync Labs in violation of the implied warranties of fitness and merchantability. Plaintiff's brief does not specifically address this claim or provide any facts establishing what products were delivered and how they breached the implied warranties of fitness and merchantability. Plaintiff also establishes no facts or legal theory as to why he has individual claims for unnamed products allegedly provided to Sync Labs. Finally, Plaintiff does not provide any support for his disagreement with Defendants' statement that the breach of warranties count "is based solely upon alleged warranties of products Defendant Fusion Manufacturing may have delivered to Sync Labs." Def.'s Statement of Material Facts, ECF No. 197-2 ¶ 77, Pl.'s Statement of Material Facts, ECF No. 201-1 ¶ 77. Summary judgment is granted to Defendants on Count Seven. *See Saldana v. Kmart Corp.*, 260 F.3d 228, 231 (3d Cir. 2001) ("The party opposing summary judgment may not rest upon the mere allegations or denials of the ... pleading; its response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.") (internal quotations omitted) (citing Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 574).

### H.    Count Eight

Plaintiff's promissory estoppel claim is only addressed to Ferchek. ECF No. 9 ¶¶116–21. Because Plaintiff has failed to show a genuine dispute of material fact or provide any factual basis for this claim, summary judgment will be entered for Defendant on Count Eight.

The elements of promissory estoppel are: "1) a clear and definite promise, 2) made with the expectation that the promisee will rely upon it, 3) reasonable reliance upon the promise, 4) which results in definite and substantial detriment." *E. Orange Bd. of Educ. v. New Jersey Sch.*

NOT FOR PUBLICATION

*Const. Corp.*, 405 N.J. Super. 132, 148 (App. Div. 2009). Plaintiff's Amended Complaint alleges

that Defendant Ferchak made three promises to Sync Labs: (1) "Ferchak promised to make an

investment in Sync Labs," (2) Ferchak promise[d] to work for the company at least four years or

until the exit or IPO, and (3) Ferchak promise[d] not to intervene and poise [sic] the business

relation between the Company and the Grantor (NJCST)." As with most of his other claims,

Plaintiff's Opposition, Statement of Material Facts, and accompanying exhibits do not

specifically address this claim other than to disagree, without citation, with Defendants'

submissions from Plaintiff's deposition. Pl.'s Statement of Material Facts, ECF No. 201-1 ¶ 78.

The first promise identified by Plaintiff seems to be the same one memorialized in the

Funding Agreement, making it an insufficient basis for a promissory estoppel claim. *Broad St.*

*Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, No. CIV. 11-2775 JBS/JS, 2012 WL 762498, at

*9 (D.N.J. Mar. 6, 2012). The second alleged promise appears to be the promise memorialized in

the Work for Hire Agreement, which the Court adjudicated as part of the first motion for

summary judgment. ECF Nos. 102–03. Finally, Plaintiff cites nothing in the record in support of

the third alleged promise. The Court will grant summary judgment to Defendant on this claim.

**I.    Count Ten**

Plaintiff's final claim alleges that Defendant Ferchak made false and defaming statements

about him. ECF No. 9 ¶¶ 128–133. Because plaintiff has failed to provide specific facts that

create a triable issue, summary judgment will be granted in favor of Defendants.

The elements of a defamation claim are: (1) a false statement about the plaintiff, (2)

communication of the statement to a third party, (3) fault of the defendant amounting at least to

negligence, and (4) damages suffered by the plaintiff. *See DeAngelis v. Hill*, 847 A.2d 1261,

1267–68 (N.J. 2004). Defendants contend that Plaintiff admitted that his defamation claim rests

NOT FOR PUBLICATION

solely on a March 2, 2011 email Ferchak sent to the New Jersey Commission on Science and

Technology. Def.'s Statement of Material Facts, ECF No. 197-2 ¶ 82. Plaintiff disagrees, but

does not provide any evidence as to any additional bases. Because Plaintiff has failed to properly

support or address its assertion of disagreement, the Court considers the fact undisputed. Fed. R.

Civ. P. 56(e)(2), (3).

Again, Plaintiff does not specifically address the defamation claim in his brief opposing

summary judgment. During his deposition Plaintiff testified that Ferchek defamed him in his

March 2, 2011 email to the NJCST. Hager Dec., ECF No. 197-3, Ex. 3 at 215:5–19. According

to Radulescu, Ferchek defamed him by suggesting in the email that Radulescu didn't have

enough money to match the contribution for the NJCST grant. *Id.*, Ex.12 at D20. A review of the

email makes clear that Ferchek only represented to the NJCST that he was "not aware if the

company has found any other source of matching funds." *Id.* Because there is no genuine dispute

as to any material fact and no jury could conclude that this statement is false or was negligently

made, summary judgment is granted in favor of Defendants. *Saldana*, 260 F.3d at 231.

### III.     The Court will not reconsider its prior grant of summary judgment

Defendants also move the court to reconsider its September 4, 2013 decision granting

summary judgment to Plaintiff on his claim that Defendant Ferchak violated their work for hire

agreement. ECF No. 197-1 at 17. Defendants argue that reconsideration is appropriate because

new evidence from Plaintiff's deposition proves that summary judgment was improper. *Id.* at 19.

As previously stated, a motion for relief from judgment under Rule 60(b)(2) based on newly

discovered evidence must be made within a year after the entry of judgment. Fed. R. Civ. P.

60(c)(1). Defendants filed for relief from the previous summary judgment order almost three

years after the entry of judgment. ECF No. 197-1. It follows that Defendants' motion for relief

NOT FOR PUBLICATION

from judgment was not timely brought and is denied. Even if the motion had been timely filed,

Defendants' new evidence would not meet the standard for "new evidence" set by Rule 60(b)(2)

because a deposition of the Plaintiff is not evidence that "could not have been discovered . . .

through the exercise of reasonable diligence." *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991).

**CONCLUSION**

Defendants' motion for summary judgment is granted in part and denied in part.

Defendants' motion for reconsideration of the Court's September 4, 2013 summary judgment

order is denied. An appropriate order follows.

DATE: *16 November 2016*

William H. Walls
Senior United States District Court Judge